**MANHATTAN CABLE TELEVISION, INC., Plaintiff,**

v.

**The CABLE DOCTOR, INC. and Kenneth Sanders, Defendants.**

**No. 92 Civ. 2888 (MEL).**

United States District Court, S.D. New York.

June 22, 1993.

As Amended June 23, 1993.

Daniel J. Lefkowitz, Jericho, NY, for plaintiff.

Young and Young, New York City, for defendants; Sanford F. Young and Jan B. Rothman, of counsel.

LASKER, District Judge.

The Cable Doctor, Inc. and its principal, Kenneth Sander, (collectively the "Cable Doctor"), without authority from Manhattan Cable Television, Inc. ("MCTV"), have previously installed "second" outlets for the reception of cable programming in the homes of MCTV's customers. MCTV brought suit to enjoin Cable Doctor from doing so and Cable Doctor earlier moved to dismiss the complaint. By an Order and Opinion dated October 8, 1992, we granted the Motion to Dismiss for lack of jurisdiction, finding that Cable Doctor's alleged conduct did not violate the Cable Communications Policy Act of 1984 or the Communications Act of 1934. *Manhattan Cable Television, Inc. v. Cable Doctor, Inc.*, 802 F.Supp. 1103 (S.D.N.Y.1992).

On October 5, 1992, three days prior to our decision dismissing MCTV's complaint, Congress enacted the Cable Television Consumer Protection and Competition Act of 1992, Pub.L. No. 102–385, 106 Stat. 1460. This new federal legislation amended the Cable Communications Policy Act of 1984 and MCTV now moves under Fed.R.Civ.P. 60(b)(6) for relief from the dismissal of its complaint, for leave to file an amended complaint under Fed.R.Civ.P. 15(a) and for a preliminary injunction.

i. *Rule 60(b)(6).*

Rule 60(b) provides that "[o]n motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order or proceeding for ... (6) any other reason justifying relief from the operation of the judgment," Fed.R.Civ.P. 60(b). Rule 60(b)(6) "confers broad discretion on the trial court to grant relief when 'appropriate to accomplish justice,'" *Matarese v. Le Fevre*, 801 F.2d 98, 106 (2d Cir.1986), *cert. denied*, 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987), and "constitutes a 'grand reservoir of equitable power to do justice in a particular case,'" *id.*

MCTV argues that relief under Rule 60(b)(6) is warranted on the basis of the new factual allegations and the new legal authorities set forth in its proposed amended complaint, including the recent amendment to the Cable Communications Policy Act of 1984. Cable Doctor counters that MCTV is simply seeking reargument of the issues resolved by this Court's earlier decision and that accordingly no relief is warranted under Rule 60(b)(6). *See Cruickshank & Co. v. Dutchess Shipping Co.*, 805 F.2d 465, 468 (2d Cir.1986) (Rule 60(b)(6) relief denied where appellant did not advance new claims or new facts).

■ Relief under Rule 60(b)(6) is granted because, as discussed below, the new federal legislation establishes that, contrary to our earlier opinion, the unauthorized installation of second outlet service violates 47 U.S.C. § 553(a)(1) of the Cable Communications Policy Act of 1984.

MCTV's original complaint alleged that Cable Doctor's installation of second outlet service violated 47 U.S.C. § 553(a)(1) which provides that:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553(a)(1). Our earlier opinion concluded that second outlet service was not a "communications service offered over a cable system" and that, accordingly, Cable Doctor's conduct was not prohibited by this provision.

A distinct but related provision of the Cable Communications Act of 1984 is 47 U.S.C. § 543 which is entitled "Regulation of Rates" and provides the extent to which local fran-

**36**

chising authorities and federal and state agencies may regulate the rates for the provision· of "communications service provided over a cable system to cable subscribers." This provision has been amended by the new federal legislation and, as amended, makes clear that it covers the installation of second outlet service. The amended version states specifically that:

> [t]he regulations prescribed by the Commission under this subsection shall include standards to establish ... the price or rate for—
>
> ....
>
> (B) installation and monthly use of connections for additional television receivers.

Cable Television Consumer Protection and Competition Act of 1992, sec. 3(a), § 543(b)(3), 106 Stat. 1460, 1466.

■ Although 47 U.S.C. § 553, which is the provision Cable Doctor has allegedly violated, was not itself similarly amended, we nevertheless conclude that there is no reason not to construe the phrase "communications service offered over a cable system" in that provisioñ to have the same meaning as the practically identical phrase "communications service provided over a cable system to cable subscribers" in the amended 47 U.S.C. § 543. Accordingly, we conclude that second outlet service falls within the scope of 47 U.S.C. § 553 and that Cable Doctor's installation of this service is prohibited by that provision of the Cable Communications Policy Act of 1984 as amended by the new legislation.

■ Cable Doctor argues that amendments to the Cable Communications Policy Act of 1984 enacted after the commencement of this suit should have no effect on the outcome of the case and that, to the contrary, the very fact that 47 U.S.C. § 543 was amended to include the regulation of rates for the "installation and monthly use of connections for additional television receivers" is evidence that the earlier legislation was not intended to cover such rates.

The argument is unpersuasive. Regardless whether the amendment to 47 U.S.C. § 543 changes the scope of that provision, the fact remains that, as the law now stands, the unauthorized installation of second outlet

service is a cable service covered by the provision and, by implication, under 47 U.S.C. § 553(a)(1). That being so, the Court now has jurisdiction of the subject matter of this case and is obliged to exercise it.

Moreover, subsequent clarification of the law has been held to be a proper basis for relief under Rule 60(b)(6). *See Pierce v. Cook & Co.*, 518 F.2d 720 (10th Cir.1975) (Rule 60(b)(6) relief granted following change, in a related state case, of the state doctrine relied on in the federal diversity case), *cert. denied*, 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976); *McGrath v. Potash*, 199 F.2d 166 (D.C.Cir.1952) (Rule 60(b)(6) relief granted following passage of new act by Congress eliminating statutory requirement on which judgment was based); *DeWeerth v. Baldinger*, 804 F.Supp. 539 (S.D.N.Y.1992) (Rule 60(b)(6) relief granted following change in state law). Cable Doctor's reliance on *Nunnery v. Barber*, 23 Fed. R.Serv.2d (Callaghan) 232 (4th Cir.1977), is misplaced. In that case the Court of Appeals held that the District Court should not have granted relief under Rule 60(b)(6) from its earlier judgment because there was no indication that the new law was intended to have retroactive effect. Since Cable Doctor's conduct is alleged to be ongoing, retroactivity is not a relevant consideration. Nor is there any merit to Cable Doctor's argument that because, according to it, MCTV's damage claims are speculative, there is no case or controversy for the Court to entertain.

For these reasons, MCTV's motion for relief under Rule 60(b)(6) is granted. The Order of October 8, 1992 dismissing the complaint is vacated.

ii. *Leave to file amended complaint.*

Rule 15(a) provides that pleadings may be amended by leave of court and that "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The proposed amended complaint, like the original complaint, alleges that Cable Doctor's conduct violates the Cable Communications Policy Act of 1984 (as amended) and New York State Executive Law § 825(6). In addition, it sets forth new pendent state law claims for "Conversion and Trespass," "Intentional In-

terference with and Procurement of Breach of Contract" and "Theft of Services" under New York State Penal Law § 165.15(4). The proposed amended complaint also presents new factual claims including the allegation that Cable Doctor's conduct exposes MCTV to the risk of substantial penalties under F.C.C. regulations which require cable operators to avoid excessive signal leakage from cable systems.

Cable Doctor's only objection to MCTV's motion to amend is that MCTV has failed to meet the requirements for relief under Rule 60(b). However, we have already concluded that relief under that Rule is appropriate. Cable Doctor's reliance on *Key Airlines, Inc. v. National Mediation Board,* 745 F.Supp. 749 (D.D.C.1990), and *Browning Avenue Realty Corp. v. Rosenshein,* 142 F.R.D. 85 (S.D.N.Y.1992), is misplaced because in both those cases, as distinct from the present one, the district court denied relief from its earlier judgment and accordingly no basis to grant amendment of the complaint existed.

MCTV's proposed amended complaint is valid on its face because, as discussed above, Cable Doctor's alleged conduct violates the Cable Communications Policy Act of 1984 as amended. Moreover, MCTV's proposed amended complaint states a valid state law claim for "Intentional Interference with and Procurement of Breach of Contract" on the basis of the contracts between MCTV and its subscribers which provide that MCTV customers "shall not interfere with, alter or remove any MCTV equipment nor permit anyone else to do so." (Pl.'s Ex. E).

MCTV's motion for leave to amend the complaint is granted.

### iii. *Preliminary Injunction.*

MCTV moves for a preliminary injunction: enjoining defendants' connections and attachments to and/or tampering with plaintiff's cable television system without plaintiff's authorization and further enjoining any acts by defendants in providing cable television service to plaintiff's subscribers at additional outlets or as may otherwise be in violation of plaintiff's contracts and agreements with its subscribers for providing reception of cable television service(s).

(Notice of Mot. at 1–2). To be entitled to preliminary injunctive relief, a party must establish:

> that it is likely to suffer possible irreparable harm if the requested relief is not granted and either (1) a likelihood of success on the merits of its case or (2) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly in its favor.

*Citibank, N.A. v. Nyland (CF8) Ltd.,* 839 F.2d 93, 97 (2d Cir.1988).

■ MCTV argues that it is entitled to preliminary injunctive relief because Cable Doctor's unauthorized installation of second outlet service causes it a loss of revenues and exposes it to the risk of F.C.C. sanctions as a result of potential signal leakage. The Director of Technical Operations for Time Warner Cable of New York City, MCTV's successor in interest, states that "one of the major causes of signal leakage is improperly installed or spliced cable connections," (Aff. of Eugene Bohan ¶ 5), and that "[i]f a cable operator is not in compliance with acceptable standards, and the maximum [cumulative leakage index] level, the F.C.C. can mandate a shut down of the entire cable system or assess large fines of up to $12,500 per day, until the source of signal radiation is detected and the leakage stopped," (Aff. of Eugene Bohan ¶ 7). MCTV also points out that the City and State of New York are harmed by Cable Doctor's second set installation activity by the loss of franchise fees from the unauthorized installation of cable services. Finally, MCTV contends that, even if it cannot show more than a "bare minimum" of irreparable harm, a preliminary injunction is warranted because "several courts have held that absence of justification for violation of clear statutory rights virtually eliminates the necessity of showing irreparable harm," *Storer Communications, Inc. v. Mogel,* 625 F.Supp. 1194, 1202 (S.D.Fla.1985); *Home Box Office, Inc. v. Pay TV of Greater New York, Inc.,* 467 F.Supp. 525, 529 (E.D.N.Y.1979).

Cable Doctor answers that the drastic remedy of injunctive relief against it should not be granted because the only evidence

**38**

that MCTV has put before the court of a violation by Cable Doctor consists of one instance of installation of second outlet service and in that very instance the Direct Sales Supervisor of MCTV's successor in interest, Time Warner Cable of New York City, deliberately solicited Cable Doctor's services. The limited nature of this proof does seriously undermine MCTV's showing of harm and its entitlement to injunctive relief.

It is true that MCTV has demonstrated a likelihood that it will succeed on the merits of its claims both under the Cable Communications Policy Act of 1984 as amended and state law. Nevertheless, a preliminary injunction is not warranted against Cable Doctor because MCTV has not established that it is likely to suffer possible irreparable harm pending a final determination of this case. The possibility of monetary loss does not present a risk of irreparable harm. The only non-monetary risk alleged by MCTV pending a final determination of this case is a hypothetical F.C.C. mandated shut down of its cable system. However, the occurrence of such an event is highly speculative. Moreover, as indicated above, MCTV's allegations against Cable Doctor have been substantiated with regard to a single incident only. Finally, Cable Doctor has represented to the Court that it has ceased to install second outlet service pending the outcome of this litigation. In sum, there is no present showing of the likelihood of irreparable harm to MCTV.

MCTV's motion for relief from the dismissal of its complaint and for leave to file an amended complaint are granted. MCTV's motion for a preliminary injunction is denied. Cable Doctor's motion for sanctions against MCTV is denied.

It is so ordered.