LINE COMMUNICATIONS
CORP., Plaintiff,

v.

Lisa J. REPPERT and Reppert
Kelly, LLC, Defendants.

No. 03 Civ. 3331.

United States District Court,
S.D. New York.

June 3, 2003.

Raymond B. Grunewald, New York City,
for Plaintiff.

### DECISION AND ORDER

MARRERO, District Judge.

On May 14, 2003, Line Communications Corp. ("Line") moved by order to show cause upon the affidavit of Tatiana Aleksa ("Aleksa"), President and CEO of Line, for a preliminary injunction [1] to compel Lisa J. Reppert ("Reppert") and Reppert Kelly LLC ("Reppert Kelly") to issue to Line funds, in the amount of $835,243.13 plus interest to date, currently being held in an attorney escrow trust account (the "Escrow Account") on behalf of Line, as well as the legal file for Line maintained at Reppert Kelly (hereinafter, the "Order to Show Cause"). After submissions were filed in opposition and in reply to the injunctive relief requested in the Order to Show Cause, the Court held a hearing on May 30, 2003 to address the motion (hereinafter, the "Hearing").[2] For the reasons

---

**1.** Although in this Decision and Order it is assumed that the Order to Show Cause asks for a preliminary injunction—as it was assumed at the Hearing on this matter without objection from the parties—since the Order to Show Cause was brought requesting immediate relief without final resolution of the matter through the normal course of proceedings, the nature of the injunction sought is not clearly expressed in the papers provided by Line. In any event, the standard for a permanent injunction is essentially the same as that for a preliminary injunction, with the exception that the plaintiff must show actual success on the merits in a permanent injunction rather than a likelihood of success for a pre-

liminary injunction. *See, e.g., University of Texas v. Camenisch,* 451 U.S. 390, 392, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981).

**2.** The form of the Order to Show Cause submitted by Line, as well as the papers submitted in opposition and in reply, are insufficient and not in compliance with the Local Rules of this Court. Except as otherwise permitted by the Court, all motions and oppositions, including an order to show cause, must be supported by "a memorandum of law, setting forth the points and authorities relied upon in support of or in opposition to the motion, and divided, under appropriate headings, into as many parts as there are points to be deter-

stated at the Hearing, and as set forth below, the injunctive relief requested in the Order to Show Cause is DENIED.

## I. *BACKGROUND*

Aleksa and Robert Bado ("Bado") entered into a merger agreement on October 23, 2000, joining Octet Communications Corp. ("Octet"), which was presided over by Aleksa as President, CEO and Chairman, and Atlantic Express Communications Company, Inc. ("Atlex"), of which Bado was the President and CEO. The merger of these two companies resulted in the formation of Line.[3] Bado was appointed President and CEO of Line and Aleksa was appointed Chairman of the Board. Octet interests retained a narrow majority of the Board of Directors.

From October 23, 2000 until September 11, 2001, Line business was primarily managed by Bado, although he would continue to seek Aleksa's approval on specified matters and Aleksa continued to "cultivate additional [Line] business abroad as well as domestically ..." (*See* Affidavit of Tatiana Aleksa ("Aleksa Aff."), dated May 14, 2003 at ¶ 4.) During this time period and thereafter, Aleksa alleges that Bado acted improperly in a variety of broadly defined ways, including using "shell" corporations,

taking excessive salary, using Line resources and equipment for other interests, etc. (Aleksa Aff, ¶¶ 6, 7.)

Due to the events of September 11, 2001, Line, whose offices were located in the World Trade Center vicinity, sustained significant damage and loss, seriously impeding its continued ability to conduct business. Line had property damage insurance with The Hartford Insurance Company ("Hartford") and Bado, allegedly without consulting Aleksa, retained Reppert Kelly, specifically Reppert, to assist Line's collection of insurance monies due from Hartford.

Aleksa alleges continuing improprieties on the part of Bado after September 11, including that he violated his fiduciaries duty to Line and, instead diverted money, contacts, and business to his own privately controlled interests. Ultimately, Line offices were emptied by Bado and the equipment put in storage. Line stopped doing business as of April 2002.[4]

On July 1, 2002, the Board of Directors authorized Aleksa to be the sole signatory authorized to deposit any funds collected on behalf of Line, including any insurance monies recovered by Hartford. Reppert was informed of this development.

mined." Local Civil Rule 7.1; *see also Demarest v. Zimny*, No. 91 Civ. 2547, 1991 WL 79322 (S.D.N.Y. May 3, 1991). Furthermore, failure to comply with this rule is sufficient reason for the denial of the motion. *Id.* Moreover, the affidavit accompanying an order to show cause must state in a "clear and specific" manner why a procedure other than by notice of motion is necessary. Local Rule 6.1(d); *Pearson–Fraser v. Bell Atlantic*, No. 01 Civ. 2343, 2002 WL 1213435 (S.D.N.Y. Feb.5, 2002). In this case, although allusions are made in Aleksa's affidavit to the "necessity" of the funds and Reppert's legal files concerning Line, no legal standards are discussed nor does Line otherwise address in any meaningful detail the immediate need for the funds. Accordingly, Line's submissions requesting

injunctive relief are insufficient as a matter of form and could be denied on this basis alone.

3. At the Hearing, the proposed interveners, who are identified and described below, argued that the merger of Octet and Atlex never occurred because of the failure to perform certain conditions precedent. For the purposes of the instant motion, however, the Court assumes the success of the merger since the money at issue here was recovered on behalf of Line, the merged company.

4. Although the Aleksa Aff. actually indicates that business was stopped in April 2003, from the context of the affidavit, and as confirmed at the Hearing, it is clear that April 2002 was intended.

Bado then called a "Notice of Special Meeting of Shareholders" on September 17, 2002 (hereinafter, "Shareholder Meeting"), with the stated purpose of removing Aleksa and her affiliates from management of Line and in her stead appointing others who represented Bado's interests. A proxy war began and apparently Aleksa prevailed. On September 17, 2002, the shareholders voted to remove Bado and his two affiliates from the Board of Directors and to terminate Bado as President and CEO. Aleksa was appointed interim President and CEO of Line. (*See* Resolutions of the Special Shareholders Meeting ("Resolutions"), dated September 17, 2002, attached as Exh. A to the Affirmation of Plaintiff's Counsel in Response to Defendants' Reply to Plaintiff's Order to Show Cause.)

Hartford ultimately settled the Line claims for $1,100,000, which monies are payable to Line. Subtracting attorney's fees, the remaining $835,243.13 is currently being held by Reppert in the Escrow Account.

Aleksa maintains that she has been using her own funds to maintain Line and that the company's need for funds is urgent in order to continue its business. Consequently, Line asserts that it needs the insurance proceeds being held by Reppert immediately to sustain its business operations, or, as explained at the Hearing: "Get it back on its feet." Moreover, Line indicates that it needs the Reppert legal file concerning Line in order to ascertain Bado's use of funds disbursed by Reppert.

Defendants respond that they have kept the funds in escrow, pending a court order or joint consent from Bado and Aleksa indemnifying them from any liability for releasing the funds, because (i) Line issued a written directive indicating that the money was to remain in the Escrow Account until receipt of an appropriate authorization from the Board of Directors, which Defendants allege has not been received (Reppert Aff. Exh. C); (ii) both Bado and Aleksa had instructed Reppert not to deposit settlement proceeds because they were concerned about creditors attaching the money prior to resolution of the issues pending between the parties; and (iii) both Bado and Aleksa have claimed that they were properly in charge of Line, creating confusion and concern about releasing the funds. Specifically, Bado told Defendants that his termination at the Shareholder Meeting was unlawful, that he had a contract negating any such action, and that Aleksa could not act as CEO because of her immigration status. On or about October 2002, Defendants allegedly spoke to the Ethics Boards of New Jersey concerning release of the funds and were told that they were acting correctly in keeping the funds pending a resolution of the dispute between Aleksa and Bado.

Having heard about the Order to Show cause from Defendants, Bado, as well as Maiden Telecom, Inc. ("Maiden") and KORH USA, Inc. ("KORH") (collectively, "State Court Plaintiffs"), by letter dated May 23, 2003, seek to intervene as a matter of right in this action pursuant to Rule 24(a)(2) of the Fed.R.Civ.P. The State Court Plaintiffs assert that the money being held by Reppert in escrow is under dispute in a civil action that was commenced by them against Line in the Supreme Court of the State of New York, New York County, on April 1, 2003 ("State Court Action"). The State Court Action involves claims by the State Court Plaintiffs for unpaid salary, severance pay, and repayment of moneys loaned to Line. The State Court Plaintiffs argue that they are indispensable parties in this action and are therefore entitled to intervene as of right, in that they claim an interest in the insur-

ance proceeds in the Attorney Escrow Account, and that disposition of this action in their absence would impede their ability to protect that interest. Because of the State Court Action, Bado's counsel specifically requested that Defendants not release funds until the lawsuit brought in state court is resolved.

In addition to their arguments concerning their right to the insurance proceeds held in the Attorney Escrow Account, which is apparently the main subject of dispute in the State Court Action, the State Court Plaintiffs contend that the Shareholder Meeting was not properly convened because Aleksa and her interests held the Shareholder Meeting in Bado's absence even though it was officially adjourned, that Bado was not lawfully terminated as CEO and President of Line, and that Bado's contract negates any such resolution of the Board of Directors, even if properly made.

With regard to their claims implicating the insurance proceeds, the State Court Plaintiffs assert that Bado and Aleksa signed an irrevocable written undertaking on April 8, 2002 to apply the proceeds of Line's insurance claims to pay Line's liability in a certain specified order. The agreement basically indicates that Bado's, Maiden's and KORH's interests should be satisfied with priority. Finally, the State Court Plaintiffs allege that this money must remain in escrow because, since Aleksa is neither an American citizen or a permanent resident, and because she may no longer be validly in the United States in light of her visa status, there is a risk that Aleksa will abscond to her native Russia with the money, leaving them without remedy. Moreover, because the only assets or monies Line possesses are the insurance proceeds held in the Escrow Account, the State Court Plaintiffs argue that any injunctive relief granted to Line in connec-

tion with the instant Order to Show Cause will directly affect and impair their ability to collect the money owed to them by Line. Therefore, they argue that maintaining the status quo, with the insurance proceeds remaining in the Escrow Account, is the proper course of action at this stage in the proceedings.

## II. DISCUSSION

### A. STANDARD OF REVIEW

In order to prevail on a motion for a preliminary injunction, a party must establish irreparable harm and either (1) a likelihood of success on the merits of the underlying claim or (2) sufficiently serious questions going to the merits of the claim and a balance of hardships tipping decidedly in the moving party's favor. *See Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir.2002).

### B. IRREPARABLE HARM

The Second Circuit has noted that the irreparable harm requirement is "the single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir.1999) (per curiam) (citations omitted). As a result, unless the party moving for a preliminary injunction can show that the alleged injury " 'is neither remote nor speculative, but actual and imminent and ... cannot be remedied by an award of monetary damages,' a motion for a preliminary injunction should be denied." *Levinson v. Cello Music & Film Sys., Inc.*, 199 F.3d 1322, 1999 WL 980949 (2d Cir.1999) (quoting *Rodriguez*, 175 F.3d at 234) (unpublished decision).

In this case, Line's argument concerning irreparable harm is very sparse, with no legal citation whatsoever. Line merely states that the monies it seeks are "desperately needed to continue the Company's

business, rebuild it, settle with valid creditors, and to fight off Bado's continuing attempts to convert these funds to his personal non Line use." (Affirmation of Raymond B. Gruenwald in Support of Order to Show Cause ("Gruenwald Aff."), dated May 14, 2003, ¶ 7.) However, Line admits that it has stopped doing business as of April 2002, albeit a decision allegedly made unilaterally by Bado. (Aleksa Aff. ¶ 6.) Furthermore, the argument that the money is needed to fight off Bado's attempts to convert these funds is contradicted by the fact that the funds are not accessible to Bado while they are held in the Escrow Account. Whatever else is meant by fighting off "Bado's attempts to convert these funds" is left entirely unclear in Line's submissions. Moreover, the need for this money is not documented or the "valid creditors" defined or proven. Finally, Aleksa's ability or plans to restart this business, and the necessity of doing so before this dispute is fully resolved, is not addressed in any detail nor otherwise convincing.

At most, in the time pending ultimate resolution of this action, Aleksa may lose money. However, "the possibility of monetary loss does not present a risk of irreparable harm." *Manhattan Cable Television, Inc. v. Cable Doctor, Inc.*, 824 F.Supp. 34 (S.D.N.Y.1993); *accord Borey v. Nat'l Union Fire Ins. Co. of Pitt., Penn.*, 934 F.2d 30, 34–35 (2d Cir.1991) ("Monetary loss alone will generally not amount to irreparable harm."); *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir.1989) ("A monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation.") Any other harm alluded to by Line is thoroughly speculative and unsupported. In sum, Line does not even mention the words "irreparable harm" in the papers submitted, or at the Hearing before being specifically questioned by the Court, and the mere conclusory statements provided are not sufficient to satisfy the stringent standard for the extraordinary relief requested.

In addition, "[t]he burden upon the moving party is heightened when the movant seeks to disturb the status quo by ordering affirmative relief, as opposed to preserving the status quo by prohibiting the nonmovant from altering the status quo." *West v. Keane*, No. 93 Civ. 6680, 1995 WL 434306 (S.D.N.Y. July 24, 1995); *accord Johnson v. Kay*, 860 F.2d 529, 540 (2d Cir.1988). This rule takes on even greater importance, where, as here, the movant seeks full relief from the preliminary injunction. *Johnson*, 860 F.2d at 540 ("Where, however, the grant of the preliminary injunction will give the movant essentially all the relief he seeks, the injunction is often deemed mandatory rather than prohibitory, and a somewhat higher standard is applied, under which the movant must show a *substantial* likelihood of success on the merits, rather than merely a likelihood of success on the merits.") (emphasis in original). In this case, Line is asking for ultimate relief and the disturbance of the status quo, without expressing extraordinary circumstances or convincing arguments concerning irreparable harm. Therefore, because Line has failed to make a sufficient showing of irreparable harm as required for injunctive relief, the relief requested in the Order to Show Cause must be denied.

## C. *SUCCESS ON THE MERITS*

Although not the ground for the Court's ruling, the Court notes that Line's likelihood of success on the merits has also not been sufficiently demonstrated in any of its sparse submissions in the record before the Court. If Aleksa is in fact the properly appointed CEO and President of Line,

and if the Board properly requests release of the funds to Line as constituted, the funds should be released. Moreover, since Aleksa has attached a copy of the Resolutions appointing her as interim CEO and President and terminating Bado as CEO and President and his interests from the Board, unless otherwise proven to be deficient, the Resolutions are binding. (*See* Pl. Aff. Exh. B.)

However, the propriety of the Shareholder Meeting, the proper constitution of the Board of Directors, the Board's consent to the release of the funds and the validity of Aleksa's position as CEO and President, should be properly established before relief is issued, particularly in light of the heightened standard applicable in this case—substantial likelihood of success on the merits—because Line requests full relief in the Order to Show Cause. *See Johnson*, 860 F.2d at 540. Besides conclusory allegations and accusations, Line has not put before the Court a sufficiently persuasive factual or legally documented record of its entitlement to the money. For instance, neither the notice of the Shareholder Meeting or Line's by-laws, which would assist the Court in determining whether all corporate regulations have been complied with, have been submitted to the Court. More fundamentally, the veracity of Line's representations are disputed. A preliminary injunction will not be awarded unless the rights of the parties are "indisputably clear." *Brown v. Gilmore*, 533 U.S. 1301, 1303, 122 S.Ct. 1, 150 L.Ed.2d 782 (2001); *Turner Broad. Sys. Inc. v. Fed. Communications Comm'n*, 507 U.S. 1301, 1303, 113 S.Ct. 1806, 123 L.Ed.2d 642 (U.S.1993); *Rosemont Enterp. v. Random House Inc.*, 366 F.2d 303, 311 (2d Cir.1966) ("A preliminary injunction is always a drastic remedy and the one seeking to invoke such stringent relief is obliged to establish a clear and compelling legal right thereto based upon undis-

puted facts.") (internal quotation omitted). Here, there is substantial dispute as to the propriety of Aleksa's control of Line. Therefore, these issues should be resolved before an injunction may be granted.

## III. *ORDER*

Accordingly, it is hereby

**ORDERED** that Line's request for injunctive relief expressed in the Order to Show Cause discussed herein is denied for failure to make a proper showing of irreparable harm; and it is further

**ORDERED** that, if they still wish to intervene in this case, the State Court Plaintiffs submit a motion to intervene pursuant to Rule 24(a)(2) of the Fed.R.Civ. P., with an accompanying memorandum of law, addressing the applicability of the legal standards to their proposed grounds for intervening in this case, and the basis for this Court's jurisdiction if the State Court Plaintiffs are allowed to intervene in light of the complete diversity of jurisdiction rule, *Strawbridge v. Curtiss*, 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806), and 28 U.S.C. § 1367; and it is further

**ORDERED** that the State Court Plaintiffs submit their motion to intervene on or before June 13, 2003 and that the parties confer and submit to the Court for approval a briefing schedule for any opposition and reply briefs the parties intend to file.

**SO ORDERED.**