IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

No. 07–2658

CAVEL INTERNATIONAL, INC., *et al.*,

Plaintiffs-Appellants,

v.

LISA MADIGAN, *et al.*,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 07 C 50111—**Frederick J. Kapala**, *Judge*.

Submitted July 17, 2007—Decided July 18, 2007*

Before EASTERBROOK, *Chief Judge*, and POSNER and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. Cavel International, the principal appellant (we can ignore the others), produces horsemeat for human consumption. The plant at which it slaughters the horses is in Illinois. Americans do not eat horsemeat, but it is considered a delicacy in Europe and Cavel exports its entire output. Its suit challenges the constitutionality of a recent amendment to the Illinois Horse Meat Act, 225 ILCS

---

* The appellants' motion for an injunction pending appeal was decided in a brief order (Chief Judge Easterbrook dissenting) with a notation that opinions explaining the ground for the order and the dissent would follow. The opinions are being released in typescript.

635/1.5, that makes it unlawful for any person in the state to slaughter a horse for human consumption or "to import into or export from this State, or to sell, buy, give away, hold, or accept any horse meat if that person knows or should know that the horse meat will be used for human consumption." Cavel lost in the district court, has appealed, and, after unsuccessfully moving the district court for an injunction pending appeal, has asked us for such an injunction, emphasizing the disastrous consequences for its business if the decision of the district court stands.

An affidavit by the firm's general manager states that it is a virtual certainty that if the injunction is denied the result will be the "permanent closure" of its plant. The state counters feebly with an unattested statement that because Cavel some years ago reopened after a fire had forced it to close for two years, it can probably reopen again if it has to close during the appeal. But there is no contention that Cavel lacked fire insurance to tide it over that earlier period of closure. Should the judgment of the district court upholding the constitutionality of the new statutory amendment be reversed, Cavel could not obtain monetary relief from the defendants. They are state officials sued in their official capacities because the only relief sought against them is an injunction. They therefore are not subject to liability for damages; a suit against state officials in their official capacity is treated as a suit against the state itself.

Cavel has made a compelling case that it needs the injunction pending appeal to avert serious irreparable harm—the uncompensated death of its business. Its showing persuaded the D.C. Circuit to grant Cavel a stay pending judicial review of an order by the Department of Agriculture that would if upheld force the shutdown of its business on grounds unrelated to those of the present litigation. *Humane Society of the United States v. Cavel International, Inc.*, No. 07–5120 (D.C. Cir. May 1, 2007) (per curiam). The state does not question the gravity of Cavel's situation (despite the remark about the fire) but responds that the state will incur irreparable harm, too, if the injunction is granted, because a

"slaughter cannot be undone." But the statute does not seem to be intended to protect horses. (The object of the statute is totally obscure.) For it is only when horsemeat is intended for human consumption—the niche market that Cavel serves (less that 1 percent of its output is sold for other consumption)—that a horse cannot be killed for its meat. Were Cavel or a successor able to find a market in pet-food companies, the slaughter of horses at its plant would continue without interference from the state. And, if not, all that will happen is that horses will be slaughtered elsewhere to meet the demands of the European gourmets.

The state argues that the injunction will diminish "the scope of democratic governance." That is a powerful reason for judicial self-restraint when a statute, state or federal, is sought to be invalidated by a court. A *rule* barring state statutes from going into effect until any challenges to their validity were litigated to completion would be offensive on that ground; it would amount to rewriting the effective date in all Illinois statutes. But at issue is a *stay*, based on a showing in a particular case that the harm to the challenger from denial of a stay would greatly exceed the harm to the state from its grant, that would delay the application of the statute to the challenger for a few months (the appeal in this case has been expedited and will be argued on August 16). Such a stay does not operate as a statutory revision or significantly impair democratic governance. It is a detail that because the statute in question is applicable to only a single entity, a stay of enforcement against that entity acts to postpone the effective date of the statute rather than just to postpone the statute's application to one entity subject to it. The state does not argue that a statute can never be enjoined pending appeal; it concedes, as we shall see, that such an injunction is appropriate if the usual criteria for a stay pending appeal are satisfied. The horsemeat statute is remote from the vital interests of most Illinois residents; a brief delay in its enforcement against Cavel will not create a perceptible harm. Indeed, it is difficult to see what harm would ensue from permanently abrogating the statute if the welfare of

horses would not be affected, as it might well not be, as we have pointed out.

Even though denying the injunction pending appeal would do far more harm to Cavel than granting it would do to the state, we must consider whether the appeal has any merit. If an appeal has no merit at all, an injunction pending the appeal should of course be denied. But if the appeal has some though not necessarily great merit, then the showing of harm of the magnitude shown by Cavel in this case would justify the granting of an injunction pending appeal provided, as is also true in this case, that the defendant would not suffer substantial harm from the granting of the injunction. This is the "sliding scale" approach to decisions on motions for preliminary injunction that we have endorsed in previous cases, e.g., *Christian Legal Society v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006); *FoodComm International v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003); *American Hospital Supply Corp. v. Hospital Products Ltd.*, 780 F.2d 589, 593–94 (7th Cir. 1985), as have other courts. E.g., *Serono Labsoratories, Inc. v. Shalala*, 158 F.3d 1313, 1317–18 (D.C. Cir. 1998); *Dan River, Inc. v. Icahn*, 701 F.2d 278, 283 (4th Cir. 1983). It amounts simply to weighting harm to a party by the merit of his case.

In denying the motion for an injunction pending appeal, the district court did not apply this test or indeed any other. He said only that Cavel had failed to make a "strong showing" that the horsemeat amendment is unconstitutional. He ignored the balance of harms. Cavel's failure to make a strong showing is certainly relevant to the granting of relief, but it is not decisive. The judge did not exercise the required discretion in determining whether to grant the injunction, and so his decision is not entitled to the deference to which discretionary rulings are entitled. Nor is his ruling that Cavel failed to make a strong showing of likelihood to prevail entitled to deference. It was a legal ruling the appellate review of which is plenary. *Hinrichs v. Bosma*, 440 F.3d 393, 396 (7th Cir. 2006).

There is a difference between asking a district court for a preliminary injunction and asking a court of appeals for a stay of, or other relief from, the district court's ruling. But the sliding-scale approach is also applied in such a case. *Id.*; *Sofinet v. INS*, 188 F.3d 703, 706–07 (7th Cir. 1999); *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300–01 (7th Cir. 1997); cf. *Hilton v. Braunskill,* 481 U.S. 770, 777–78 (1987). As the Supreme Court explained in *Hilton*, "different Rules of Procedure govern the power of district courts and courts of appeals to stay an order pending appeal. See Fed. Rule Civ. Proc. 62(c); Fed. Rule App. Proc. 8(a). Under both Rules, however, the factors regulating the issuance of a stay are generally the same." *Id.* at 776.

Cavel, it is true, is not seeking a stay; it is seeking to enjoin the enforcement of the horsemeat statute against it pending appeal. But Rule 8(a)(1)(C), (2), of the appellate rules explicitly authorizes the court of appeals to grant an injunction pending appeal and does not suggest that the standard is different from that applicable to a motion to stay the district court's judgment. We are mindful that Chief Justice Rehnquist, in a chambers opinion (and thus speaking only for himself and not for any of the other Justices), *Brown v. Gilmore*, 533 U.S. 1301 (2001), held that the authority to grant such an injunction is conferred not by Rule 8 but by the All Writs Act, 28 U.S.C. § 1651. Traditionally of course the applicant for relief under the Act must show an incontrovertible right to relief, and not merely some likelihood of prevailing. The Chief Justice required the same high showing by an applicant for an injunction pending appeal. As the 1967 Committee Note to Rule 8 points out, however, the Supreme Court had held that the power was an inherent judicial power; and so it doesn't have to be grounded in the All Writs Act.

The approach proposed in *Brown* has not caught on. The decision has been cited in seven cases. One was another chambers opinion by Chief Justice Rehnquist. *Wisconsin Right to Life, Inc. v. FEC,* 542 U.S. 1305, 1305–06 (2004). The other six (five district court opinions and an unpublished

court of appeals opinion) do not actually apply the Chief Justice's heightened standard to requests for injunctions against state statutes. *In re McEvily,* 55 Fed. Appx. 712 (4th Cir. 2003); *Do The Hustle, LLC. v. Rogovich,* No. 03 Civ. 3870, 2003 WL 21436215, at *8 (S.D.N.Y. June 19, 2003); *Line Communications Corp. v. Reppert,* 265 F. Supp. 2d 353, 358 (S.D.N.Y. 2003); *Foster v. Argent Mortgage Co.*, No. 07–11250, 2007 WL 2109558, at *4 (E.D. Mich. July 23, 2007); *Smith v. Directors of the Enemy of Alien Control Unit of Dept. of Justice,* No. 07CV0508LJOTAG, 2007 WL 1655780, at *2 (E.D. Cal. June 7, 2007); *Lawrence v. Reno,* No. 00 Civ. 4559, 2003 U.S. Dist. LEXIS 14867 (S.D.N.Y. Aug. 28, 2003). In *Purcell v. Gonzales*, 127 S. Ct. 5 (2006) (per curiam), the Supreme Court vacated an injunction against a state statute pending appeal without suggesting that any special standard applied to such injunctions and without citing *Brown v. Gilmore.* See also *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 842 n. 1 (D.C. Cir. 1977). The state in our case does not cite *Brown* but instead relies on our *Hinrichs* decision, which says nothing about an incontrovertible right of relief, but instead asks the district court to consider merely whether the movant has a significant probability of prevailing on his claim.

The sliding scale justifies the injunction sought by Cavel. The argument for the invalidity of the horsemeat statute is not negligible. A state can without violating the commerce clause in Article I of the U.S. Constitution (which has been interpreted to limit the power of states to regulate foreign and interstate commerce even in the absence of applicable federal legislation) forbid the importation into the state of dangerous or noxious goods. E.g., *Maine v. Taylor*, 477 U.S. 131, 151–52 (1986). But this case involves a limitation on exports, because Cavel has no domestic market; and the only ground that Illinois advances for the horsemeat amendment is "public morality." The state has a recognized interest in the humane treatment of animals within its borders, and we can assume that this interest embraces the life of the animals and not just a concern that they not be killed gratui-

tously or in a painful manner. But as we noted earlier, the Illinois statute does not forbid the killing of horses, but only the killing of them for human consumption of their meat. If Cavel could (as apparently it cannot) develop a market for its horsemeat as pet food, there would be no violation of the statute. So it is possible that the burden that the statute places on the foreign commerce of the United States is not offset by a legitimate state interest, in which event the statute is unconstitutional. *Kassel v. Consolidated Freightways Corp. of Delaware*, 450 U.S. 662, 669–70 (1981). "[T]he incantation of a purpose to promote the public health or safety does not insulate a state law from Commerce Clause attack" *Id.* at 670. Since Cavel has no significant domestic market, the statute does not "discriminate" against the foreign commerce of the United States, but it does burden it and so the state is obliged to give some reason for it.

We do not suggest that Cavel has a winning case or even a good case (the Fifth Circuit in *Empacadora de Carnes de Fresnello, S.A. v. Curry*, 476 F.3d 326, 336–37 (5th Cir. 2007), recently upheld a similar Texas law against a challenge based on the commerce clause), but only that it has a good enough case on the merits for the balance of harms to entitle it to an injunction pending an expedited appeal that will enable the merits to be fully briefed and argued. It is important to note in this regard that the sliding-scale approach that governs Cavel's request for an injunction pending appeal does not require a "strong showing" that the applicant will win his appeal. The Supreme Court was precise in stating in *Hilton v. Braunskill, supra*, 481 U.S. at 776, that among "the factors regulating the issuance of a stay are…whether the stay applicant has made a strong showing that he is likely to succeed on the merits." Certainly that is one of the factors to be considered, but it has to be balanced against the harms to the parties of granting or denying the injunction.

EASTERBROOK, *Chief Judge*, dissenting. My colleagues assume that, when deciding whether to issue an injunction pending appeal, both the trial and appellate courts should use the same sliding scale that a district judge uses when deciding the case as an initial matter. This is a mistake. Once a plaintiff has litigated and lost, a higher standard is required for an injunction pending appeal.

That's one conclusion of *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). *Hilton* holds that a stay of a district court's order pending appeal requires a "strong showing" that the appellant is likely to prevail. The Court equated appellate stays and injunctions pending appeal, both of which fall under Fed. R. App. P. 8. One cannot escape this by appealing to "inherent judicial power" (slip op. 5); once a rule has codified an approach, the rule must be followed to the exclusion of the common-law doctrines that preceded it. See *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988). Cf. *Cheney v. United States District Court*, 542 U.S. 367, 381 (2004) (the applicant must show a "clear and indisputable" right to obtain equitable relief under the All-Writs Act, 28 U.S.C. §1651).

So I ask (as my colleagues do not) whether plaintiff has made out a "strong showing" that this court is likely to reverse on the merits. It has not done so. Cavel's position is functionally identical to the one raised, and rejected, in *Empacadora de Carnes de Fresnello, S.A. v. Curry*, 476 F.3d 326 (5th Cir. 2007). My colleagues do not say that the fifth circuit is mistaken; all they are willing to venture is that the statute just might burden foreign commerce. That's a distraction, however, for Illinois does not discriminate against foreign (or interstate) commerce. No one in Illinois may slaughter a horse for human consumption, no matter where the meat will be eaten. 225 ILCS 635/1.5(a). That no one in Illinois *wants* to eat horse flesh means that all of Cavel's product is exported, but this does not convert a law regulating horse slaughter (an intra-state activity) into one that discriminates against commerce.

If the (potential) problem in the law lies in subsection (b), which forbids the export of meat produced in violation

of subsection (a), then the injunction should be directed against enforcement of subsection (b). Such an injunction would do Cavel no good, however, because the prohibition in subsection (a) against killing and butchering the horses would remain. It is telling that my colleagues enjoin operation of the statute as a whole, without suggesting that the rule against slaughtering a horse for human consumption— the only part of the law that injures Cavel—is subject to any non-frivolous legal objection given the Supreme Court's tolerant approach to even silly statutes that regulate business. See, e.g., *New Orleans v. Dukes*, 427 U.S. 297 (1976).

Although a "strong showing" on the merits is required for any injunction pending appeal, insisting on a significant likelihood of success is especially apt when the subject is enforcement of a statute. An injunction pending appeal does not permanently frustrate attainment of the state's goal. It does, however, permanently discard the statute's effective date. This provision won't be enforced at some later time; it will *never* be enforced. It is as if the majority had held that the norm under the Illinois Constitution of 1970—that laws take effect on the June 1 following their enactment—violates federal law and must be replaced by something along the lines of: "No state law that imposes a substantial cost on any private interest may take effect until all judicial challenges have been exhausted." But my colleagues don't explain what federal rule requires this displacement of the state's choice of an effective date. An unspoken (and unjustified) norm of judicial supremacy lies behind this claim of power to override the state's decision.

Almost all laws cause injury; very few statutes are Pareto-superior (meaning that no one loses in the process, and at least some people gain). When a rule benefits some persons without injuring others, there is no need for legislation; the people involved will reach the accommodation on their own. Laws that cause loss to some persons (Cavel, for example) create transition effects. How these should be accommodated is itself a question for democratic choice. Some scholars favor immediate change, with the losers not being compensated. See, e.g., Louis Kaplow, *An Economic*

*Analysis of Legal Transitions*, 99 Harv. L. Rev. 506 (1986). Illinois has opted a longer period as a rule, although allowing the legislature to provide for immediate effectiveness of statutes enacted before June 1, or by a super-majority.[†] Usually both the gains and losses of effective dates are felt by the state's populace; there is no reason to distrust the state's conclusion that the gains from swift effectiveness exceed the losses.

No state of which I am aware—and no federal law or serious student of the subject—has advocated the rule: "Laws that impose losses large enough to prompt people to hire lawyers take effect only at the conclusion of federal judicial review." Such a rule not only denies states part of their legislative power but also leads to strategic behavior: people hire lawyers and file suits not because they expect to win, but just because they can benefit from delay. That's a fair characterization of this suit. Just as the state won't compensate Cavel for losses in the interim if Cavel wins in the end, Cavel does not propose to compensate Illinois for any injury caused by delayed effectiveness of the statute. The majority does not require Cavel to post an injunction bond. Requiring an applicant to back its position with a promise to pay would curtail strategic claims.

Federal courts should allow states to select and enforce effective dates for their statutes. Equitable relief is appropriate only when the plaintiff shows a substantial likelihood of winning. Cavel has not met this standard and is not entitled to an injunction pending appeal.

---

[†] Article 4 Section 10 of the Illinois Constitution provides: "The General Assembly shall provide by law for a uniform effective date for laws passed prior to June 1 of a calendar year. The General Assembly may provide for a different effective date in any law passed prior to June 1. A bill passed after May 31 shall not become effective prior to June 1 of the next calendar year unless the General Assembly by the vote of three-fifths of the members elected to each house provides for an earlier effective date." The Illinois Horse Meat Act became law on May 24, 2007, and took effect the same day by virtue of §99 in the statute.