In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 13-3192

IN RE: A&F ENTERPRISES, INC. II, *et al.*,

*Debtors-Appellants.*

APPEAL OF:

A&F ENTERPRISES, INC. II, *et al.*,

*Appellants,*

*v.*

IHOP FRANCHISING LLC, *et al.*,

*Appellees.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 13 C 7020 — **Virginia M. Kendall**, *Judge.*

---

ARGUED DECEMBER 11, 2013 — DECIDED FEBRUARY 7, 2014

---

Before WOOD, *Chief Judge*, and FLAUM and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge*. Ali Alforookh manages and operates restaurants in Wisconsin, Illinois, and Missouri under franchise agreements with International House of Pancakes ("IHOP"). He created several companies to hold the IHOP franchises he acquired over the years, including A&F Enterprises, Inc. II. Alforookh and his companies (collectively "A&F") are currently in Chapter 11 bankruptcy proceedings. Their primary assets are 17 separate IHOP franchise agreements and the corresponding building and equipment leases.[1] At this point the central dispute in the bankruptcy is the time limit for assuming these contracts. In general, debtors in Chapter 11 may assume or reject executory contracts any time before confirmation of a plan. 11 U.S.C. § 365(d)(2). Unexpired leases of nonresidential real property, however, must be assumed within 120 days (210 days if the court grants a 90-day extension). *Id.* § 365(d)(4). A&F neither assumed the building leases within 120 days nor sought an extension, so IHOP contends that the building leases were rejected, and by way of cross-default provisions, that the franchise agreements and equipment leases expired. A&F believes that because the building leases are just one part of the larger franchise arrangement with IHOP, § 365(d)(2)'s more generous time limit applies to the whole arrangement, including the building leases.

The issue for us on this appeal, however, is slightly different. A&F and IHOP fought this legal battle in bankruptcy court, and A&F lost on the merits. The bankruptcy judge issued orders deeming the building leases rejected and the

---

[1] There were 19 sets of agreements, but A&F has rejected two of them.

franchise agreements and equipment leases expired. A&F appealed this decision to the district court. A&F also sought a stay pending appeal, which both the bankruptcy court and the district court denied. Both courts thought that A&F's position lacked merit because the text of § 365(d)(4) contains no exception for leases tied to franchises. A&F filed this appeal seeking review of the district court's order denying the stay and also moved for an emergency stay. We granted the emergency motion and issued a stay order freezing the status quo during the pendency of this appeal. The sole issue for us now is whether the bankruptcy court's orders should be stayed pending resolution of the appeal on the merits, which remains pending before the district court. We find that a continued stay is warranted.

## I.

The standard for granting a stay pending appeal mirrors that for granting a preliminary injunction. *In re Forty–Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997). Stays, like preliminary injunctions, are necessary to mitigate the damage that can be done during the interim period before a legal issue is finally resolved on its merits. The goal is to minimize the costs of error. *See Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012); *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 388 (7th Cir. 1984). To determine whether to grant a stay, we consider the moving party's likelihood of success on the merits, the irreparable harm that will result to each side if the stay is either granted or denied in error, and whether the public interest favors one side or the

other. *See Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547–48 (7th Cir. 2007); *Sofinet v. INS*, 188 F.3d 703, 706 (7th Cir. 1999); *In re Forty–Eight Insulations*, 115 F.3d at 1300. As with a motion for a preliminary injunction, a "sliding scale" approach applies; the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, and vice versa. *Cavel*, 500 F.3d at 547–48; *Sofinet*, 188 F.3d at 707. An unusual twist here is that the stay issue comes to us in the context of a bankruptcy appeal to the district court. But our jurisdiction is secure under 28 U.S.C. § 1292(a). *See In re Forty–Eight Insulations*, 115 F.3d at 1300. The district judge denied the stay after concluding that A&F was not likely to succeed on the merits; although other aspects of a stay decision are reviewed deferentially, this is a legal conclusion that we review de novo. *Id.* at 1301.

The contractual relationship between the parties is undisputed. For all but four of the restaurants, there are three separate contracts: a franchise agreement, a building sublease (IHOP leases the buildings from third parties and subleases them to A&F), and an equipment lease, all of which contain cross-default provisions.[2] A&F may not use the leased buildings for anything other than IHOP restaurants, and the leases

---

[2] For some of the restaurants, the contractual arrangement is slightly different. A&F leases four of the buildings directly from third parties, rather than IHOP. These leases contain an addendum, to which IHOP is a party, making them functionally similar to the subleasing arrangement (though perhaps different enough to matter, *see infra* note 4). In the event A&F defaults on the lease or on the franchise agreement, IHOP succeeds to A&F's rights under the lease and may sublease it to a new franchisee.

cannot be assigned.[3] The parties dispute whether the agree-ments should be viewed as a single integrated contract or as separate-but-interrelated contracts, but they generally agree on the effects of the arrangement. *See generally In re FPSDA I, LLC*, 470 B.R. 257, 266–72 (E.D.N.Y. 2012) (discussing two ways to characterize these arrangements, but concluding that the choice of characterization doesn't affect whether § 365(d)(4)'s time limit applies). A&F has no way to assume the leases without also assuming the franchises; several courts have held that indivisible contractual arrangements must be assumed or rejected in whole, *e.g., In re Wagstaff Minn., Inc.*, No. 11–43073, 2012 WL 10623 (D. Minn. Jan. 3, 2012), but even if A&F were allowed to assume the leases separately, they would be worthless without the franchises since their only permitted use is the operation of IHOP restaurants.[4] Similarly, A&F cannot assume the franchises without also assuming the leases because the franchise agreements automatically expire if A&F loses the right to occupy the leased buildings. A&F argues that

----

[3] From this point forward, we will ignore the equipment leases and refer to the building leases simply as "the leases" since the analysis of the equip-ment leases matches that of the franchise agreements.

[4] This may not be true for the four franchises for which A&F leases the buildings directly from third parties. *See supra* note 2. The lease addendum says that "the anticipated use of the Demised Premises is the conduct of an … IHOP [r]estaurant," but doesn't make clear that an alternate use would constitute a breach. This, and the fact that the lease is with a third party, may make the substantive result different for these restaurants. We don't need to decide this now, however, because as long as A&F has a likelihood of success with regard to many of the franchises, and the balance of harms tips in its favor, a stay is warranted.

since the leases and franchise agreements must be assumed or rejected in tandem, the longer time limit should apply, while IHOP contends that A&F should be required to assume both within 120 days.

## II.

IHOP maintains that the text of § 365(d)(4) plainly controls, leaving no room for an exception for franchise-bound leases. It cites *Sunbeam Products, Inc. v. Chicago American Manufacturing, LLC*, 686 F.3d 372 (7th Cir. 2012), in which we warned bankruptcy courts not to create equitable exceptions to clear provisions of the bankruptcy code. But the code is not so clear in this case. While it's undeniable that § 365(d)(4)'s 120-day time limit controls stand-alone leases, it's equally undeniable that § 365(d)(2)'s longer time limit controls stand-alone franchise agreements. When a franchise agreement and a lease are inseparable, one time limit or the other will control both. In the same way that applying § 365(d)(2)'s time limit to the entire arrangement creates an "exception" for certain leases, applying § 365(d)(4)'s time limit creates an "exception" for certain franchises. Granted, the two possibilities are not perfectly symmetrical because one result permits something the code forbids (assuming a lease beyond 120 days) while the other result prevents something the code permits (assuming a franchise agreement beyond 120 days). This is a distinction without a difference, however, because a legal entitlement is lost either way: Either franchisees lose the right to assume franchise agreements at any time before confirmation of a plan, or lessors lose the right to have their leases assumed or rejected

within 120 days. Creating an exception is unavoidable, so we have no choice but to look beyond the text.

There are powerful arguments in favor of A&F's position. Chapter 11 is premised on giving debtors a full opportunity to reorganize, and provisions like § 365(d)(4) that limit this opportunity are the exception, not the rule. The franchise agreement is clearly the dominant contract and the focus of the parties' bargaining, so prioritizing the lease lets the tail wag the dog. Furthermore, what little caselaw there is on this precise issue favors A&F's position. Two bankruptcy courts have held on nearly identical facts that § 365(d)(4) does not apply to a lease that is so tightly connected to a franchise arrangement. *In re FPSDA I, LLC*, 450 B.R. 392 (Bankr. E.D.N.Y. 2011), *petition for interlocutory appeal denied by* 470 B.R. 257, 271 (E.D.N.Y. 2012) (finding that "there is not a substantial ground for difference of opinion as to whether [§ 365(d)(4)] is applicable" to a similar franchise-bound lease); *In re Harrison*, 117 B.R. 570 (Bankr. C.D. Cal. 1990). Though we are provisionally per-suaded that A&F's position has substantial merit, we empha-size that we aren't deciding the issue today. IHOP leaned heavily on the text, and now that we've indicated that we don't find the text conclusive, IHOP's position may benefit from more extensive briefing on the merits.

Because the legal issue does not have a clear-cut answer, we rest our decision on whether to grant the stay primarily on the balance of potential harms. We don't have the benefit of any factual findings—the bankruptcy judge denied A&F's request for an evidentiary hearing because he concluded that the legal question wasn't even close—but that doesn't preclude us from

deciding whether to grant a stay. This analysis is at best a rough estimation, and we are persuaded that A&F has more to lose than IHOP.

A&F fears that it will permanently lose its franchises without a stay. If a stay is denied, IHOP, which wants to sell the franchises, may do so before A&F's appeal has finished. Both parties assume that if IHOP were able to find new franchisees, A&F would have no way to recover the franchises, even if it were to win on appeal. Although neither side offers support for that assumption, we note that under equitable principles in bankruptcy law, courts sometimes refuse to undo certain business transactions. *SEC v. Wealth Mgmt. LLC*, 628 F.3d 323, 331–32 (7th Cir. 2010) (noting that it is a "fact-intensive" inquiry that weighs, among other things, "the effects … on innocent third parties" and the "difficulty of reversing consummated transactions"); *see also United States v. Buchman*, 646 F.3d 409, 410 (7th Cir. 2011) ("[A] completed [foreclosure] sale will not be upset."); *In re UNR Indus., Inc.*, 20 F.3d 766, 769–70 (7th Cir. 1994). Therefore, we will assume without deciding that the parties are correct and that the sale of the franchises could not be undone.

Even so, IHOP argues that the loss of the franchises would not be irreparable because A&F could be fully compensated by money.[5] Though damages are adequate to remedy many

---

[5] A&F suggests that the appeal will be mooted if the franchises were sold, preventing them from even recovering damages. A&F doesn't cite any authority for this, and we doubt that it is correct. *See In re Res. Tech. Corp.*, 430 F.3d 884, 886–87 (7th Cir. 2005) (rejecting the argument that the

(continued...)

business losses, difficulties in valuation can in some circumstances make damages inadequate, resulting in irreparable harm. *Roland Mach.*, 749 F.2d at 386. Sale proceeds here could provide some estimate of value, but long-term effects—like permanent changes in ownership—are especially hard to measure. *Cf. id.* ("[I]t may be very difficult to … project [the] effect [of terminating an exclusive-dealing contract] into the distant future."). Indeed, a primary assumption behind Chapter 11 is that reorganization preserves value better than liquidation, and leaving A&F with nothing but a damages remedy is the equivalent of converting the reorganization into a liquidation. *See Toibb v. Radloff*, 501 U.S. 157, 163–64 (1991) ("Chapter 11 … embodies the general Code policy of maximizing the value of the bankruptcy estate. … Under certain circumstances a … debtor's estate will be worth more if reorganized under Chapter 11 than if liquidated under Chapter 7."). Valuation is more complicated here because of the many possible routes A&F's Chapter 11 proceeding could take. Quantifying the hypothetical results of this process is an impossible task.

Valuation problems aside, damages are also insufficient to protect Alforookh's interest in continuing to operate his business of choice. *See Roland Mach.*, 749 F.2d at 386 (" '[T]he

---

[5] (…continued)

disputed issues in a contested bankruptcy settlement were rendered moot by its final consummation in part because the court could award damages even if undoing the settlement wouldn't be feasible). We don't need to decide this issue, however, because we find irreparable harm to A&F for other reasons.

right to continue a business in which William Semmes had engaged for twenty years and into which his son had recently entered is not measurable entirely in monetary terms; the Semmes want to sell automobiles, not to live on the income from a damages award.' " (quoting *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2nd Cir. 1970))); *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 10-CV-3303, 2011 WL 2473330, at *11 (C.D. Ill. June 22, 2011) ("The loss or threatened loss of a franchise can constitute irreparable harm." (citing *Semmes Motors*, 429 F.2d at 1205)), *aff'd*, 695 F.3d 676 (7th Cir. 2012). Chapter 11 is intended to "permit[] business debtors to reorganize and restructure their debts in order to revive the debtors' businesses." *Toibb*, 501 U.S. at 163. We have held, along with other circuits, that a conversion from Chapter 11 to Chapter 7 is a final appealable order in part because the loss of an opportunity to reorganize is irreparable. *In re USA Baby, Inc.*, 674 F.3d 882, 883 (7th Cir. 2012) (holding that conversion is "final in the practical sense that a Chapter 7 proceeding results in liquidation, depriving the debtor of the chance he would have in a Chapter 11 proceeding to reorganize and continue as a going concern"); *In re Rosson*, 545 F.3d 764, 770 (9th Cir. 2008) ("[B]ecause a conversion to Chapter 7 takes control of the estate out of the hands of the debtor, it seriously affects substantive rights and may lead to irreparable harm to the debtor if immediate review is denied."). And as we've already noted, a sale of the restaurants would put an end to A&F's hopes of reorganization. IHOP's only response is that A&F is unlikely to be able to achieve a successful reorganization, but IHOP can't expect us to assess the likely outcome of the entire bankruptcy at this stage. We have no trouble finding

that there would be significant, irreparable harm to A&F were we to deny the stay.

On the other side, IHOP contends that the goodwill associated with its trademark will be damaged if A&F continues to operate its restaurants while the appeal is pending. IHOP points us to customer complaints, failed inspections, some bad press at one location, and a temporary shutdown at two other locations due to a licensing issue. As IHOP reminds us, we have frequently said that trademark violations are irreparable, primarily because injuries to reputation and goodwill are nearly impossible to measure. *E.g.*, *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992). A&F responds that a few isolated problems are a normal part of operating restaurants and that it has dealt swiftly with them as they've come up. We have no way of determining who is right, especially without the benefit of any evidentiary findings below. That said, IHOP does not argue (at least to us) that any of these issues are material breaches that themselves would warrant termination of the franchise agreements. And all the cases that IHOP cites in which franchisees were preliminarily enjoined from continued use of the franchisor's trademark involved franchise agreements that had either already terminated or were clearly breached. *E.g.*, *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424 (7th Cir. 2001) (repeated attempts to negotiate renewal terms had failed and the franchise agreement had long since expired); *Gorenstein Enters., Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431 (7th Cir. 1989) (*franchisee* was seeking to rescind the franchise); *7-Eleven, Inc. v. Spear*, No. 10-cv-6697, 2011 WL 830069 (N.D. Ill. Mar. 3, 2011) (franchise had been terminated based on an undisputed material breach); *Cal City*

*Optical Inc. v. Pearle Vision, Inc.*, No. 93 C 7577, 1994 WL 114859 (N.D. Ill. Mar. 29, 1994) (franchisor showed "clear-cut" breaches of the franchise agreement). Unlike these cases, the only thing that might make A&F's use of IHOP's trademark unauthorized—the bankruptcy time limit in § 365(d)(4)—is unrelated to improper use of the mark or violations of the franchise agreement. Therefore, we think it clear that any damage to IHOP's reputation is much less severe than the more immediate injury of cutting off A&F's reorganization efforts entirely.

## III.

Because A&F has demonstrated a likelihood of success on the merits and the potential harm to A&F is greater than that to IHOP, a stay is warranted. Accordingly, the district court's order denying A&F's motion for a stay is REVERSED. Our emergency stay shall remain in place. Enforcement of the bankruptcy court orders dated August 5, 2013, and September 18, 2013, deeming the debtors' leases and subleases rejected, and the order dated September 23, 2013, deeming the debtors' franchise agreements and equipment leases expired, is stayed until final disposition of A&F's appeal.