**Ana LUCACELA, Petitioner,**

v.

**Janet RENO, United States Attorney General, Respondent.**

No. 98–3251.

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 29, 1998.

Decided Nov. 23, 1998.*

* This opinion was originally released in typescript form.

Raymond J. Sanders (submitted), Chicago, IL, for Petitioner.

Janet Reno, Office of the United States Attorney General (submitted), Washington, DC, Samuel Der-Yeghiayan, Immigration & Naturalization Service, Chicago, IL, Kristal A. Marlow, Department of Justice, Civil Division, Immigration Litigation, Washington, DC, for Respondent.

Before EASTERBROOK, RIPPLE and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.

This matter is presently before the court on the petitioner's Emergency Motion to Stay Deportation. On October 30, 1998, a temporary stay of deportation was granted pending resolution of this motion, and the INS was ordered to respond to the motion by November 9, 1998. The INS filed its response on November 6, 1998. For the reasons set forth in this opinion, we deny the motion for an emergency stay.

## BACKGROUND

On October 29, 1998, Ms. Lucacela filed an emergency motion for a stay of deportation pending consideration of her petition for review of a Board of Immigration Appeals ("BIA") decision denying her motion to reconsider and reopen her application for asylum and withholding of deportation. Ms. Lucacela is a native and citizen of Romania who entered the United States in June of 1993. Deportation proceedings were initiated against Ms. Lucacela in July 1994. Consequently, Ms. Lucacela sought asylum and withholding of deportation on the basis that she is an anti-Communist Catholic of Croatian descent who feared persecution if she returned to Romania because of her opinions, her brothers' actions, and the fact that she had been absent from Romania for several years. After a hearing on October 11, 1995, an Immigration Judge ("IJ") found Ms. Lucacela deportable and denied her application for asylum and withholding of deportation.

Ms. Lucacela appealed the IJ's decision, but on May 27, 1997, the BIA upheld that determination. The BIA found that neither the questioning of Ms. Lucacela by Romanian authorities following her brothers' departure from the country nor the inability to express freely her opinions demonstrated past persecution. Additionally, the BIA found that Ms. Lucacela failed to establish a well-founded fear of future persecution. In light of her "vague assertions" of negative consequences she expected to experience if she returned to Romania, and her failure to produce any evidence regarding persecution suffered in post-Ceaucescu Romania, the BIA concluded that "although [Ms. Lucacela] may have a sincere mistrust of the Romanian government, her unsupported assertions are unpersuasive ... and insufficient to establish her status as a refugee." BIA Order of May 27, 1997, at 2. Moreover, the BIA noted that even if Ms. Lucacela had established past persecution, because "substantial changes have taken place [in Romania] since [Ms. Lucacela's] departure," namely the overthrow of the communist regime, a well-founded fear of future persecution would be rebuttable. Id. at 3. Consequently, the BIA dismissed Ms. Lucacela's appeal.

Ms. Lucacela did not file a petition for review from that order. Instead, Ms. Lucacela's previous counsel apparently attempted to file a motion to reopen the proceedings, which the BIA rejected for filing defects on August 20, 1997. Eventually, Ms. Lucacela obtained new counsel and filed another motion to reconsider and reopen before the BIA in May 1998, claiming that her prior attorney had failed to present all relevant facts to support her persecution claim. Furthermore, Ms. Lucacela alleged, she had never received a copy of the BIA's May 1997 decision. Thus, Ms. Lucacela, by her new counsel, sought to reopen the deportation proceedings one year after issuance of the BIA's final deportation order.

The BIA, however, denied Ms. Lucacela's motion as untimely. Because the BIA's previous order had been entered on May 27, 1997, and their records showed proper service of that order upon Ms. Lucacela's counsel, pursuant to 8 C.F.R. § 3.2(c)(2), the motion to reopen had to be filed within 90 days of the BIA's final decision, or September 30, 1996, whichever was later. Thus, Ms. Lucacela's motion was due by August 25, 1997. Because it was not filed until May 4, 1998, and none of the statutory exceptions applied, the BIA found the motion to reopen was filed out of time. Furthermore, even if the BIA construed the motion as a motion to reconsider, it would still be untimely, because 8 C.F.R. § 3.2(b)(2) requires that filing be made within 30 days of the BIA's final decision.

On September 8, 1998, Ms. Lucacela filed a timely Petition for Review of the BIA's August 6, 1998 decision with this court. Nevertheless, on October 19, 1998, the INS issued a letter ordering Ms. Lucacela to report for deportation on November 3, 1998. Consequently, on October 29, 1998, Ms. Lucacela, by her counsel, filed an emergency motion to stay deportation pending appeal. In that motion, Ms. Lucacela raises numerous constitutional grounds in support of granting a stay, but primarily contends that it would be a denial of her due process rights if she were deported before she had exhausted her remedy of appeal to this court. In addition, Ms. Lucacela asserts that she would suffer irreparable harm if deported because of the persecution she fears in Romania. Ms. Lucacela contends that the harm is so great and affects the public interest to such an extent that "every asylum applicant should be granted a stay of removal pending appeal." Motion at 5. Finally, Ms. Lucacela asserts that she has a substantial likelihood of prevailing on the merits of her appeal. However, she does not identify the relevant issues, or explain why she is likely to prevail.

Pursuant to this court's order of October 30, 1998, the INS filed a response in opposition to Ms. Lucacela's motion. First, the INS contends that asylum applicants do not have a constitutional right to judicial review of adverse decisions, or an automatic right to a stay of deportation. Furthermore, the INS asserts that Ms. Lucacela failed to make a showing of a likelihood of success on the merits in light of the jurisdictional time limits in 8 C.F.R. § 3.2. Additionally, the INS points to Congress' 1996 amendment to the immigration laws which expressly revokes the right to an automatic stay of deportation upon service of a petition for review, as well as its expressed policy of removing illegal aliens from the United States as soon as possible, as further evidence that there is no need to grant a stay.

## ANALYSIS

### A.

On September 30, 1996, Congress made sweeping changes to the Immigration and Nationality Act ("INA") by enacting the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. 104–208, 110 Stat. 3009 (1996). Section 309(c)(1) of IIRIRA provides that these amendments to the judicial review process shall not apply to exclusion or deportation proceedings pending as of the title III–A effective date. Because deportation proceedings were initiated against Ms. Lucacela in 1994, prior to the enactment of IIRIRA, a reading of this section in isolation might lead to the conclusion that these amendments do not affect her case. However, § 309(c)(1) contains a caveat—"subject to the succeeding provisions of this subsection." Section 304(c)(4), then, explains that "[i]n the case described in paragraph (1) in which a final order of exclusion or deportation is entered more than 30 days after the date of the enactment of this Act, notwithstanding any provision of section 106 of the [INA] (as in effect as of the date of the enactment of this Act) to the contrary," certain transitional rules apply. Because the Board's final order of deportation was entered on August 6, 1998, more than 30 days after the enactment of IIRIRA, the transitional rules govern this court's review of Ms. Lucacela.[1]

▮ Whether IIRIRA applies is significant in determining whether a stay of depor-

---

1. Even if this court viewed the BIA's May 27, 1997 order as the relevant one for determining the applicability of IIRIRA, the same result would be reached.

tation pending review is automatic or discretionary. Prior to the enactment of IIRIRA (and thus at the time deportation proceedings were initiated against Ms. Lucacela), section 106(a)(3) of the INA provided for an automatic stay of deportation pending review of the petition unless the court otherwise directs. *See* 8 U.S.C. § 1105a(a)(3) (1994), repealed by IIRIRA. However, under the transitional rules, § 309(c)(4)(F) of IIRIRA now provides that "service of the petition for review *shall not* stay the deportation of an alien pending the court's decision on the petition, unless the court orders otherwise" (emphasis added). Thus, it appears that Ms. Lucacela is not entitled to an automatic stay of deportation, simply by virtue of filing a petition for review, but rather it is within the discretion of this court.

■ Notwithstanding the IIRIRA amendments, Ms. Lucacela argues that denying an automatic stay pending review to asylum applicants such as herself violates their due process right to judicial review. However, the Supreme Court explained years ago that

[t]he power to expel aliens, being essentially a power of the political branches of government, the legislative and executive, may be exercised entirely through executive officers, "with such opportunity for judicial review of their action *as Congress may see fit to authorize or permit.*" ... No judicial review is guaranteed by the Constitution.

*Carlson v. Landon*, 342 U.S. 524, 537 & n. 28, 72 S.Ct. 525, 96 L.Ed. 547 (1952) (emphasis added) (internal citation omitted); *see also Yang v. INS*, 109 F.3d 1185, 1196 (7th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 624, 139 L.Ed.2d 605 (1997). With the IIRIRA amendments, Congress specifically revoked the right to an automatic stay upon filing a petition for review, and left the decision to the discretion of the federal courts. *See* § 309(c)(4)(F), Pub.L. 104–208, 110 Stat. 3009 (codified at 8 U.S.C. § 1252(b)(3)(B)).

Although Ms. Lucacela appears to dispute the constitutionality of this provision, this court has recognized Congress' ability to determine the scope of the court's review of INS decisions. *Yang*, 109 F.3d at 1197 ("The power to establish the inferior federal courts under Article III § 1 permits Congress to determine their jurisdiction."). In fact, this court definitively rejected similar arguments to "disregard" certain amendments by Congress to the INA. *See id.* ("As a practical matter, the right to obtain review, in any court, on the theories our petitioners advance is gone. That is the point of the legislation."); *Skutnik v. INS*, 128 F.3d 512, 514 (7th Cir.1997) (enforcing § 309(c)(4)(E) of the IIRIRA which precludes review of certain discretionary decisions). Accordingly, pursuant to § 309(c)(4)(F) of the IIRIRA, Ms. Lucacela is not entitled to a stay of deportation pending appeal "unless the court orders otherwise."

**B.**

■ The movant seeking a discretionary stay of deportation must demonstrate: (1) a likelihood of success on the merits; (2) that irreparable harm would occur if a stay is not granted; (3) that the potential harm to the movant outweighs the harm to the opposing party if a stay is not granted; and (4) that the granting of the stay would serve the public interest. *Ignacio v. INS*, 955 F.2d 295, 299 (5th Cir.1992) (per curiam).

■ As to the likelihood of success on the merits, Ms. Lucacela does not address this issue in any detail. Instead, she conclusorily states that she has a substantial likelihood of succeeding on the merits without identifying the issues or explaining why she will prevail. *See* Motion at 8. The INS is correct that 8 C.F.R. § 3.2 sets specific time limits for the filing of motions to reopen and reconsider, and Ms. Lucacela's second motion was not timely. *See* Response at 8.[2] Nevertheless, the BIA maintains discretion in determining whether to grant such motions, even when they are untimely. *See In re X–G–W–*, Interim Decision (BIA) 3352, 1998 WL 378104, at *3 (June 25, 1998) ("the Board

---

**2.** Ms. Lucacela's initial motion to reopen and reconsider was apparently timely, since it was rejected for filing defects on August 20, 1997, 7 days before the time for filing a motion to reopen expired. Unfortunately, the question of whether the first timely filed motion impacts the BIA's analysis of the timeliness of the second motion has not been addressed by either Ms. Lucacela or the INS. Thus, it is unclear if this is a factor to be considered.

retains limited discretionary powers under [8 C.F.R. § 3.2 of] the regulations to reopen or reconsider cases sua sponte in unique situations where it would serve the interest of justice"). If there are grounds on which to argue that the BIA's August 6, 1998 determination was incorrect, Ms. Lucacela has not raised them here. Accordingly, it does not appear that she has met her burden of showing a likelihood of success on the merits.

Next, Ms. Lucacela contends that she will suffer irreparable harm if deported, by being deprived of her day in court, her friends, and the life she has established in the United States, and returned to the country in which she fears persecution. The INS responds that "the normal hardship resulting from deportation of an alien who has remained unlawfully in the United States is not the sort [sic] irreparable harm that a stay aims to prevent." Response at 9.

Finally, Ms. Lucacela asserts that it is in the public's interest to grant stays of deportation to all asylum applicants pending review. However, as discussed in detail *supra*, Congress made it clear, by revoking the INA provision granting automatic stays upon filing of a petition for review, that public policy has now shifted to enforcing deportation orders immediately.

In summary, Ms. Lucacela's failure to address why she is likely to succeed on the merits, as well as the clear public interest (as expressed by Congress) in deporting illegal aliens without delay, compels the conclusion that a stay of deportation is not appropriate under the circumstances.

Accordingly, the emergency motion to stay deportation is denied.

MOTION FOR STAY DENIED.