Ioan SOFINET, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 98–2853.

United States Court of Appeals, Seventh Circuit.

Aug. 23, 1999.*

---

* This opinion was released initially in typescript.

Y. Judd Azulay (submitted), Azulay & Azulay, Chicago, IL, for Petitioner.

Kristen A. Giuffreda (submitted), Department of Justice, Office of Immigration Litigation, Margaret J. Perry, Department of Justice, Civil Division, Immigration Litigation, Washington, DC, for Respondent.

Before BAUER, FLAUM, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Ioan Sofinet is a 34–year–old Romanian who is seeking asylum in the United States. Thus far, he has been unsuccessful: first the Chicago office of the Immigration and Naturalization Service ("INS") found him deportable and denied his petition for asylum, after a hearing before an immigration judge ("IJ") and then the Board of Immigration Appeals ("BIA") affirmed that determination. Next, Sofinet filed a notice of appeal to this court, as he is permitted to do under the Immigration and Naturalization Act ("INA") § 106(a), 8 U.S.C. § 1105a(a), and he sought a stay of deportation pending our consideration of his appeal. (8 U.S.C. § 1105a was repealed by the Illegal Immigration Reform and Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009. However, because Sofinet was in deportation proceedings on the effective date of the Act, the transitional rules provide for judi-

cial review under § 1105a(a) as it existed before IIRIRA, subject to a caveat discussed further below. IIRIRA § 309(c)(4).) The INS did not oppose his request for a stay, and on March 23, 1999, this panel granted the stay and ordered the case to proceed to briefing and argument. This opinion explains in somewhat greater detail why we found the stay to be appropriate.

Before Congress amended the INA in 1996, section 106(a)(3) of the statute provided for an automatic stay upon the service of a petition for review for most aliens, unless a court ordered otherwise. See 8 U.S.C. § 1105a(a)(3), the full text of which we reproduce in the margin.[1] Like many other aspects of the law, this one was changed by IIRIRA. Under the transitional rules established by IIRIRA for judicial review of cases of aliens who were placed in deportation proceedings before April 1, 1997, and whose final orders of deportation were entered more than 30 days after the date of enactment of IIRIRA—i.e. after October 30, 1996—the presumption with respect to stays pending appellate review has essentially been reversed. Section 309(c)(4)(F) of IIRIRA states that "service of the petition for review shall not stay the deportation of an alien pending the court's decision on the petition, unless the court orders otherwise...." 110 Stat. at 3009–626.

■ Sofinet's first argument in his moving papers was that he was entitled to the automatic stay provided by the pre-IIRIRA version of the law. It is clear, however, that he falls under the transitional IIRIRA rules. The BIA began deportation proceedings against Sofinet on January 24, 1997 and issued its final order of deportation on June 24, 1998, well after 30 days beyond the enactment of IIRIRA. (Even if the IJ's order were thought to be the "final order of deportation," Sofinet is still under IIRIRA, because she issued that order on March 17, 1997.) See *Lucacela v. Reno,* 161 F.3d 1055, 1057 (7th Cir.1998). As in *Lucacela,* the question here is therefore whether Sofinet has made the necessary showing for a discretionary stay of deportation pending judicial review.

■ This court, along with the other courts of appeals, applies the general criteria developed for stays or injunctions pending appeal. See generally Fed. R.App.P. 8, 18. *Lucacela* summarized those criteria as follows:

> The movant seeking a discretionary stay of deportation must demonstrate: (1) a likelihood of success on the merits; (2) that irreparable harm would occur if a stay is not granted; (3) that the potential harm to the movant outweighs the harm to the opposing party if a stay is not granted; and (4) that the granting of the stay would serve the public interest.

161 F.3d at 1058. There are, nonetheless, some differences between discretionary stays of deportation and the ordinary stay or injunction pending appeal. One important difference relates to the role the agency plays. Under Federal Rule of Appellate Procedure 18, which governs stays pending review from decisions of administrative agencies, "[a] petitioner must ordinarily move first before the agency for a stay pending review of its decision or order." Fed.R.App.P. 18(a)(1). Accordingly, we asked the parties to address the question whether an alien in Sofinet's position could seek a discretionary stay of deportation pending review from the INS. The agency responded that the answer to this question, in its view, was no; it found nothing in the INA's provisions or the immigration regulations that conferred authority on the INS to grant a stay of deportation pending the outcome of review

---

1. The service of the petition for review upon such official of the Service shall stay the deportation of the alien pending determination of the petition by the court, unless the court otherwise directs or unless the alien is convicted of an aggravated felony, in which case the Service shall not stay the deportation of the alien pending determination of the petition of the court unless the court otherwise directs. 8 U.S.C. § 1105a(a)(3).

in the court of appeals. We too see no obvious source of such authority, and we defer to the agency's position on this point. Thus, unlike the ordinary administrative review case, in review proceedings from deportation orders, the petitioner has no obligation to try to persuade the INS to stay the order before filing a motion with the court.

■ Our analysis of the four factors governing these stays is necessarily case-specific. As we explained in *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6 (7th Cir.1992), the party seeking a preliminary injunction must first demonstrate "some" likelihood of succeeding on the merits, and that it has no adequate remedy at law and will suffer irreparable harm if the preliminary relief is denied. *Id.* at 11. In deportation cases, as *Lucacela* implicitly recognized, the lack of an adequate remedy at law is always present. No one suggests that the United States government could be required to pay money damages later on to a person whose asylum application was erroneously denied. As is the case in many areas of traditional equity jurisprudence, this is a situation where specific relief is the only possible solution. The other two factors, numbered 1 and 2 on the *Lucacela* list, require more comment. As *Abbott Labs* explained, if the moving party cannot establish some likelihood of success and irreparable injury, the court's inquiry is at an end and the injunction must be denied. If the applicant meets those threshold requirements, the court will consider the balance of hardships to the moving and non-moving parties, from the denial or grant of injunctive relief respectively, and the public interest, which *Abbott Labs* defined as "the consequences of granting or denying the injunction to non-parties." *Id.* at 12.

■ These factors do not have absolute weights. Instead, this court uses a sliding scale approach, under which "the more likely it is that plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh towards its side; the less likely it is the plaintiff will succeed, the more the balance need weigh toward its side." *Id.*, citing *Diginet, Inc. v. Western Union ATS, Inc.*, 958 F.2d 1388, 1393 (7th Cir.1992); *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 387 (7th Cir.1984). Although there is thus a minimum threshold for likelihood of success, we held in *Roland Machinery* that it is a low one: "[i]t is enough that the plaintiff's chances are better than negligible...." *Id.* at 387 (internal quotations omitted). That does not mean, of course, that applicants for interim injunctive relief with relatively weak cases will always obtain injunctions. The less compelling the case on the merits, the greater the showing of irreparable harm must be.

■ Unlike the petitioner in *Lucacela*, Sofinet addressed all four criteria in his application for a stay of deportation. Briefly, his case on the merits rests principally on a claim that he suffered persecution in Romania based on his religion (he is a Seventh–Day Adventist), and that he will suffer future persecution on the same basis if he is returned to the country. He had been employed as a police officer, but, he asserted, he was subject to repeated arrests and unusual levels of punishment for refusing to work under circumstances inconsistent with his religion, he was ultimately forced into resigning from the police force, and, if compelled to return, he would be detained, interrogated, and prevented from finding new employment. The IJ found that the incidents Sofinet relied upon did not rise to the level of persecution, but Sofinet attacks her decision and that of the BIA on the ground that the Board ignored certain evidence in the record, and only by doing so did it hold that his assertions were uncorroborated. Also, he argues, the BIA mischaracterized the reasons why he had been incarcerated, which also caused it to misunderstand his claim for asylum.

Although, in light of the many asylum cases we see, these may not be the strongest arguments for reversal, they present a "better than negligible" chance of success on the merits. Turning to the irreparable injury part of the test, Sofinet points out that if his deportation is not stayed, then he effectively will be deprived of judicial review altogether of the Board's decision. That is true, because once he is out of the country his claim for asylum will be moot. 8 U.S.C. § 1105a(c) ("An order of deportation ... shall not be reviewed by any court if the alien ... has departed from the United States after issuance of the order."); 8 C.F.R. § 3.4 (providing that an alien's departure from the United States operates to withdraw the appeal of the deportation order). (Again, IIRIRA repealed 8 U.S.C. § 1105a. Because the transitional rules apply to Sofinet, § 1105a(c) still applies to him.) That fact alone in deportation cases will normally suffice to show that the injury from the lack of a stay is significant. This is not to say, however, that petitioners can always procure a stay just by showing that their case will become moot. Such a ruling would amount to a judicial repeal of the IIRIRA amendment to which we referred earlier. It means only that the single factor of the harm to the petitioner will normally be easy to establish, and that the right to a stay of deportation will rest more heavily on the showing of likely success on the merits, the balance of harms, and the public interest factors.

In deportation cases, the non-moving party is almost always the INS. To a large extent, the harm that it will suffer from the grant of a stay overlaps with the public interest. In *Jenkins v. INS*, 32 F.3d 11 (2d Cir.1994), overruled on other grounds, *Aguirre v. INS*, 79 F.3d 315 (2d Cir.1996), the Second Circuit addressed discretionary stays of deportation under the pre-IIRIRA statute, which were then available for aliens facing deportation because they had been convicted of a felony. Apart from the public interest in de-

porting aggravated felons, which Congress has now expressed in more draconian terms by making such cases unreviewable, IIRIRA § 309(c)(4)(G), 110 Stat. 3009–626–27; see also *Xiong v. INS*, 173 F.3d 601, 604 (7th Cir.1999), the court mentioned ways in which the issuance of a stay might harm the INS, including "by causing it to suspend execution of its deportation order, engage in another round of litigation, and incur the costs of further detention." 32 F.3d at 15. To that, we would add the public interest in the speedy and effective enforcement of the immigration laws as applied to aliens who have not made a satisfactory showing of entitlement to asylum.

In some cases, however, the INS itself takes the position that the public interest does not require immediate execution of the deportation order. That is what it did here, by filing a statement with the court that it did not oppose a discretionary stay. Given the fact that it had already issued a "bag-and-baggage" letter to Sofinet (implying that it thought early departure was desirable), it would have been helpful if it had explained why it decided to take the seemingly contradictory position of not opposing a stay of its own order. Instead, its papers said only that "respondent is satisfied that Sofinet has met the requirements for obtaining a discretionary stay of deportation pending the Court's review of his final order of deportation. Thus, respondent does not oppose the stay request." Courts cannot be rubber stamps for the agency, and we therefore do not take this kind of statement of non-opposition as the final word on the propriety of a discretionary stay. On the other hand, it is a indicator of the lack of harm the INS believes it will suffer if a stay is granted, and of the lack of harm to the public interest if Sofinet's deportation is delayed. We must assume that in other cases, perhaps where proceedings have dragged on far longer than they have here, or where immediate deportation would affect third parties either in this country or elsewhere, or where an alien's continued presence in the United

States posed some harm to the public interest here, that the agency would so inform us. We, at least, will take those and similar considerations into account. Furthermore, the court will always undertake an independent assessment of the petitioner's likely success on the merits, which might cause us to deny a discretionary stay even if the INS had no objection to one.

Finding therefore that Sofinet demonstrated a substantial enough case on the merits to satisfy our traditional test for a stay pending appeal, that the harm he would suffer from immediate deportation is great, and that the harm to the INS and the public interest in these circumstances is not substantial, we GRANT Sofinet's motion for a discretionary stay of deportation.

We add that, to the extent it lies within the INS's power to decide when to issue "bag and baggage letters" to aliens facing deportation, the orderly course of judicial review would be well served if it refrained from doing so until after the court of appeals has had a chance to review the proceedings, at least in cases where the agency itself takes the position that fair grounds for judicial review exist. This would avoid the shuffle between agency and court that occurs when there is an immediate deportation order followed by an unopposed stay. In cases subject to judicial review, both the agency and the court should take every step possible in the interests of justice to facilitate an orderly resolution of the case, either with a prompt affirmance of the deportation order, or through an order designed to preserve the rights of the individuals who show that they are entitled to further consideration by the agency, as some still do. *Lwin v. INS,* 144 F.3d 505 (7th Cir.1998); *Kossov v. INS,* 132 F.3d 405 (7th Cir.1998); *Angoucheva v. INS,* 106 F.3d 781 (7th Cir.1997).

IT IS SO ORDERED.