**TURNER CONSTRUCTION CO., INC., Plaintiff,**

v.

**UNITED STATES, Defendant,**

and

**McCarthy/Hunt, JV, Intervenor,**

and

**B.L. Harbert–Brasfield & Gorrie, JV, Intervenor.**

**No. 10–195C.**

United States Court of Federal Claims.

Originally Filed Under Seal Sept. 22, 2010.

Reissued Sept. 23, 2010.

Scott M. McCaleb, Wiley Rein LLP, Washington, D.C., Attorney of Record for plaintiff, and William A. Roberts, III, Nicole J. Owren–Wiest, Richard B. O'Keeffe, Jr., of counsel.

Anuj Vohra, U.S. Department of Justice, Civil Division, with whom was Assistant Attorney General Tony West, for defendant. Jeanne E. Davidson, Director, Kirk T. Manhardt, Assistant Director.

Mark Douglas Colley, Arnold & Porter, Washington, D.C., Attorney of Record for intervenor-defendant, McCarthy/Hunt, Joint Venture, and Cameron W. Fogle, of counsel.

Laurence Schor, Asmar, Schor & McKenna, PLLC, Washington, D.C., Attorney of Record for intervenor-defendant, B.L. Harbert–Brasfield & Gorrie, Joint Venture, and Susan L. Schor, Dennis C. Ehlers, and David A. Edelstein, of counsel.

## OPINION AND ORDER

FUTEY, Judge.

The Court issued a final judgment and injunction in this matter on July 8, 2010. On August 4, 2010, intervenor B.L. Harbert–Brasfield & Gorrie, JV ("Harbert–Gorrie") filed an appeal with the United States Court of Appeals for the Federal Circuit and then, in this Court, a motion for stay of the injunction pending that appeal. Harbert–Gorrie argues that this Court's decision was erroneous and that it is entitled to a stay under Rule 62(c) of the Rules of the United States Court of Federal Claims ("RCFC"). Plaintiff, Turner Construction Company ("Turner"), and defendant, the United States, respond that no such injunction is warranted.

Harbert–Gorrie's "Motion For Stay Pending Appeal And Request For Temporary Stay And Expedited Consideration" ("Mot. for Stay") was filed on August 9, 2010. The Court held an expedited hearing on August 19, 2010 to discuss that motion. On August 26, 2010, Turner filed a "Brief In Opposition To B.L. Harbert–Brasfield & Gorrie's Motion For Stay Pending Appeal And Request For Temporary Stay And Expedited Consideration" ("Pla.'s Resp.") and defendant filed an "Opposition To B.L. Harbert–Brasfield & Gorrie's Motion For Stay Pending Appeal" ("Def.'s Resp."). On September 3, 2010,

Harbert–Gorrie filed a "Reply To Plaintiff's And Defendant's Oppositions To Harbert–Gorrie's Motion For Stay Pending Appeal"[1] ("Harbert–Gorrie's Reply"), and Turner filed on September 8, 2010 a "Surreply In Opposition To B.L. Harbert–Brasfield & Gorrie's Motion For Stay Pending Appeal" ("Pla.'s Surreply"). Despite opposing the injunction, on August 9, 2010 defendant also filed an appeal with the Federal Circuit.

## I. Background

The facts of this case have already been extensively reviewed in the Court's opinion. *See Turner Constr. Co. v. United States*, No. 10–195C, slip op. at 2–13 (Fed.Cl. July 8, 2010). Turner, Harbert–Gorrie, and another intervenor, McCarthy/Hunt, JV ("McCarthy/Hunt") all submitted proposals to replace Fort Benning's Martin Army Community Hospital ("the Hospital"). The United States Army Corps of Engineers ("the Army") awarded Turner the contract on September 28, 2009. Harbert–Gorrie and McCarthy/Hunt, however, filed bid protests with the Government Accountability Office ("GAO") in November 2009.

Before the GAO, the intervenors alleged that improper organizational conflicts of interest ("OCIs") existed and should have barred the award of the contract to Turner. These alleged OCIs stemmed from a design contract that the Army had with the Joint Venture of Hayes, Seay, Mattern & Mattern ("HSMM") and Hellmuth, Obata & Kassbaum ("HOK"). Under this contract, HSMM/HOK provided "all services necessary" in the preparation of the design documents for the Hospital procurement. *Turner Constr.*, slip op. at 3–4.

HSMM/HOK is a subsidiary of AECOM. After the award of the Hospital contract, AECOM purchased Ellerbe Beckett ("EB"), Turner's subcontractor in charge of design. As outlined in this Court's opinion, *id.* at 5–6, and in the Contracting Officer's ("CO") extensive report, Administrative Record ("Admin.Rec.") Tab 8, AECOM and EB engaged

in some negotiations while the Hospital procurement was ongoing. The CO, however, evaluated the OCI allegations and ultimately concluded that no OCIs had tainted the procurement process.

Despite the CO's findings, the GAO recommended that the Army reprocure the contract with Turner eliminated from the competition. *B.L. Harbert-Brasfield & Gorrie, JV*, B–402229 (Comp.Gen. Feb. 16, 2010), at 11; *McCarthy/Hunt, JV*, B–402229.2 (Comp. Gen. Feb. 16, 2010), at 13. After considering its options, the Army decided to follow this recommendation and stripped Turner of the contract and began re-procurement. On March 31, 2010, Turner filed suit in this Court to contest the Army's decision. Following extensive briefing from the parties and oral argument, the Court held that the Army acted arbitrarily and capriciously in following GAO's recommendation. *Turner Constr.*, slip op. at 36. The Court issued an injunction on July 8, 2010 and ordered "the Army to restore the Hospital contract to Turner and not re-procure the contract to another firm." *Id.*

## II. Analysis

### A. Standard of Review

After a notice of appeal has been filed from a final judgment, a trial court generally loses jurisdiction over a case. *See JWK Int'l Corp. v. United States*, 49 Fed.Cl. 364, 366 (2001) (citing *Yachts Am. v. United States*, 8 Cl.Ct. 278, 280 (1985)). Under RCFC 62(c), however, a court does retain jurisdiction to modify or stay its own injunction entered as part of that judgment. A stay of an injunction pending appeal is an "extraordinary" remedy. *Axiom Res. Mgmt., Inc. v. United States*, 82 Fed.Cl. 522, 524 (2008) (quoting *Golden Eagle Ref. Co. v. United States*, 4 Cl.Ct. 622, 624 (1984)). Such a stay "is not a matter of right, even if irreparable injury might otherwise result." *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672, 47 S.Ct. 222, 71 L.Ed. 463 (1926).

---

1. In this reply, Harbert–Gorrie asked the Court to issue an order summarily denying the Motion For Stay, followed later by a written opinion, if the Court were not inclined to grant the interve-

nor's motion. *See* Harbert–Gorrie's Reply 7. The Court filed a summary order on September 9, 2010, and this opinion follows to explain the reasons for that summary denial.

The decision to stay an injunction pending appeal is a matter of judicial discretion, and the Supreme Court has identified four factors a court should weigh in considering such a stay: " '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.' " *Nken v. Holder,* — U.S. —, —, 129 S.Ct. 1749, 1761, 173 L.Ed.2d 550 (2009) (quoting *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987)). These factors do not need to be weighed equally. *Standard Havens Prods. v. Gencor Indus.,* 897 F.2d 511, 512 (Fed.Cir.1990).

### B. *Likelihood of Success on the Merits*

The first factor to consider is whether or not the movant has made a "strong showing" that it is likely to succeed on the merits of its appeal. A court does have discretion to require less than a "strong showing" if the harm to the movant is especially great. *Standard Havens Prods.,* 897 F.2d at 513 (citing *Hilton,* 481 U.S. at 776, 107 S.Ct. 2113). Even with a showing of great harm, a movant must still "demonstrate a substantial case on the merits." *Id.* According to the Supreme Court, "[i]t is not enough that the chance of success on the merits be 'better than negligible.' " *Nken,* 129 S.Ct. at 1761 (quoting *Sofinet v. INS,* 188 F.3d 703, 707 (7th Cir.1999)). Harbert–Gorrie argues that the Court made numerous errors in its opinion that establish a strong likelihood of success on appeal. These errors, however, are based primarily on incorrect readings of the Court's opinion and the law, and Harbert–Gorrie is unlikely to succeed on appeal.

### 1. *Contracting Officer's FAR 9.504(a) Duties*

According to Harbert–Gorrie, the Court made two errors in interpreting FAR 9.504(a) (2010). As discussed in the Court's opinion, that regulation contains two relevant requirements. Under FAR 9.504(a)(1), a CO must "[i]dentify and evaluate potential organizational conflicts of interest as early in the acquisition process as possible." A CO must also, under FAR 9.504(a)(2), "[a]void, neutralize, or mitigate significant potential conflicts before contract award." The Federal Circuit recently reaffirmed the difference between these two duties. *PAI Corp. v. United States,* 614 F.3d 1347, 1352–53 (Fed.Cir. 2010). This Court in a prior case has also recognized the distinction between the duties. *Filtration Dev. Co., LLC v. United States,* 60 Fed.Cl. 371, 377 (2004).

### a. *FAR 9.504(a)(1) Duty to Evaluate Potential OCIs*

The Court's first error, according to Harbert–Gorrie, was to "improperly hold that the duty to 'evaluate' a potential OCI as early as possible in the procurement process attaches only to 'significant' OCIs." Mot. for Stay 7. In its September 3 reply, the intervenor similarly states that "the Court held that a [CO] is not required to evaluate all OCIs prior to award **even if** she knows of a potential OCI at the time . . ." Harbert–Gorrie's Reply 2 (emphasis in original).

This argument hinges on a selective reading of the Court's opinion and is without merit. The intervenor primarily prunes from this section of the opinion:

[A] CO must evaluate OCIs as early in the process as possible, and, for *significant* potential OCIs, a CO must mitigate them prior to award. In some cases, the earliest time to evaluate an alleged OCI might be post-award, such as when a bid protest is brought that alleges theretofore unknown OCIs. In other cases, such as in *Filtration,* evidence of a 'significant' OCI will exist before contract award and require a CO to evaluate and mitigate it then. *Filtration Dev.,* 60 Fed.Cl. at 378.

*Turner Constr.,* slip op. at 20–21 (emphasis in original). The intervenor focuses only on the final sentence of this section, with the reference to *Filtration* removed. Based on that final sentence, the intervenor argues that the Court conflated the requirements of FAR 9.504(a) and held that a CO need only evaluate significant OCIs as early as possible. *See* Mot. for Stay 7. This argument

ignores the two sentences that come directly before the quoted sentence. In those two sentences, the Court clearly distinguished between the duty to evaluate potential OCIs as early as possible and the duty to mitigate significant potential OCIs before contract award. The Court then referenced *Filtration:* a case in which clear evidence of a significant OCI existed prior to award and thus triggered both of the duties in FAR 9.504(a). *Filtration Dev.,* 60 Fed.Cl. at 378 ("[A]ll those involved recognized the significant conflict.").

The larger context of this passage also makes clear that the Court did not somehow conflate the requirements of 9.504(a)(1) and (2). Initially in this case, the government had argued that the FAR requires a CO to "identify and evaluate potential conflicts as early in the acquisition as possible and before contract award." Def.'s Opp'n Pl.'s Mot. J. 31. The Court found the government had improperly merged the "two separate requirements of FAR Section 9.504." *Turner Constr.,* slip op. at 20. The Court's reasoning is quite similar to that of the Federal Circuit in *PAI,* which found that one party had "conflate[d] the requirements of the two regulations." *PAI Corp.,* 614 F.3d at 1351–52.

The Court did not hold that a CO's duty to evaluate potential OCIs is limited to "significant" OCIs or that a CO may ignore and not evaluate known potential OCIs prior to award. In contrast, the Court held, consistent with *PAI,* that a CO has two distinct duties under FAR 9.504(a). The intervenor's argument therefore is not likely to succeed on appeal.

b. *Timing of the CO's 9.504(a)(1) Evaluation*

The Court's second error in interpreting the regulations, according to the intervenor, was to hold that the FAR "does not require a CO, in every single procurement, to review and document whether OCIs exist prior to award." *Turner Constr.,* slip op. at 20. This holding, according to Harbert–Gorrie, is at

odds with the Federal Circuit's holding in *PAI.*

Neither *PAI* nor the FAR, however, explicitly require a CO to conduct her 9.504(a)(1) evaluation prior to award "in every single procurement," as Harbert-Gorrie claims. Under the exact language at issue in the FAR, a CO must evaluate potential OCIs "as early in the acquisition process as possible." FAR 9.504(a)(1). This is contrasted with the similar duty to mitigate significant OCIs "before contract award." FAR 9.504(a)(2). The Federal Circuit in *PAI* described these regulations as requiring "a contracting officer to identify and evaluate potential conflicts in the early stages of the acquisition process." *PAI Corp.,* 614 F.3d at 1352–53.

Here, the Court held that, in some cases, the identification and evaluation countenanced by 9.504(a)(1) may be proper if conducted after award of the contract. For instance, if the first time an allegation or evidence of a potential OCI appears is after award, then the earliest time to evaluate that potential OCI might be at that time. This holding is consistent with the intervenor's previous assertion in this case that "[s]ometimes ... an OCI cannot be identified until after award" of a contract. Harbert–Gorrie Supp. Brief 2.

Allowing a CO to conduct this evaluation post-award protects the procurement process. If a CO were limited to pre-award evaluations, then a disappointed bidder could allege an OCI after award, and claim that the CO had violated her 9.504(a)(1) duty by not evaluating the alleged OCI before award. This type of scenario could allow a disappointed bidder to game the procurement process. A CO's post-award evaluation can clear the air of any OCI taint by showing that no significant OCI existed. If, however, the CO's post-award evaluation shows that a significant potential OCI did exist and went unmitigated in violation of 9.504(a)(2), then serious remedial actions would likely be appropriate.[2] In this case, the CO essentially

---

2. In some cases, agencies have canceled an award and re-procured the contract, after the discovery of a potential OCI. *See, e.g., Axiom Res.*

*Mgmt., Inc. v. United States,* 564 F.3d 1374, 1377 (Fed.Cir.2009) (noting that, in response to a bid protest alleging an unmitigated OCI, the CO de-

found both in July 2009 and in her post-award investigation in January 2010 that no significant OCI existed. Thus, the mitigation duty of 9.504(a)(2) was never triggered. Harbert–Gorrie has not made a "strong showing" of a likelihood of success on the merits. *Nken*, 129 S.Ct. at 1761.

### 2. *Substance of the CO's 9.504(a)(1) Evaluation*

Harbert–Gorrie next argues that the Court "failed to review, in any depth, the CO's pre-award actions." Mot. for Stay 11. The intervenor then launches into a review of why, in its view, the CO's evaluation was "insufficien[t]." *Id.* at 12. This argument misses the point and seems to invite a *de novo* review of the CO's actions. As extensively discussed in the Court's opinion, the question before the Court was whether or not the Army acted arbitrarily and capriciously in deciding to implement the GAO recommendation. *Turner Constr.*, slip op. at 15–16. To answer that question, the Court had to inquire whether or not the GAO recommendation was itself rational. *See Centech Group, Inc. v. United States*, 554 F.3d 1029, 1039 (Fed.Cir.2009). The Court noted the Federal Circuit's mandate that a court must not "impermissibly [undertake] its own independent *de novo* determination" of the matter. *Honeywell, Inc. v. United States*, 870 F.2d 644, 647 (Fed.Cir.1989). Consistent with this precedent, the Court focused on the GAO decision's rationality. *See Turner Constr.*, slip op. at 18–31. It would have been improper under *Centech* and *Honeywell* for the Court to change its focus from the rationality of the GAO decision to a *de novo* determination of whether, in the Court's opinion, the CO's evaluation was sufficient. Harbert–Gorrie has thus not made a showing of a likelihood of success on the merits.

### 3. *Acceptance of and Reliance on the CO's Post–Award Investigation*

Harbert–Gorrie also argues that the Court erroneously relied on the CO's post–award investigation that was conducted after the inception of the GAO protest. This argument is not new. On June 11, 2010, the

cided to conduct an OCI analysis and issue a

Court ordered the parties to conduct supplemental briefing on the deference due to a CO's post-award, post-protest investigation. After considering those briefs, as well as prior GAO decisions that relied on similar investigations, *Turner Constr.*, slip op. at 21, the Court concluded that the GAO should have reviewed whether or not the CO was reasonable in her post-protest OCI determination.

Harbert–Gorrie now cites *Citizens to Preserve Overton Park* to assert that it was improper for the Court to rely on that investigation. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). This argument misses the point because Harbert–Gorrie incorrectly identifies the agency action at issue in the bid protest. In *Overton Park*, the plaintiffs had challenged the decision by the Secretary of Transportation to allow an expressway to be built through a park. *Id.* at 405, 91 S.Ct. 814. As in this case, the lower court was tasked with reviewing that decision under Section 706(2) of the Administrative Procedure Act. *Id.* at 414, 91 S.Ct. 814. The Supreme Court found insufficient a review based on "litigation affidavits" submitted to the lower court by the defendant to explain its actions. *Id.* at 419, 91 S.Ct. 814. The Court found that these affidavits were merely " '*post hoc*' rationalizations" and remanded the case for a review based on the entirety of the administrative record "before the Secretary at the time he made his decision." *Id.* The agency action under review by this Court is the Army's decision to implement the GAO recommendation; *Overton Park*'s mandate that post hoc rationalizations should be "viewed critically" applies to those explanations made after that particular agency action. *Id.* at 421, 91 S.Ct. 814. On this point also, Harbert–Gorrie has not shown a likelihood of success on the merits.

### 4. *The Court's Remedy*

For the first time, Harbert–Gorrie argues that the Court lacked jurisdiction to restore Turner's contract. Harbert–Gorrie asserts that this case has been "styled" a bid protest

new source selection decision).

but that the termination of Turner's contract is actually "not a bid protest" but a claim "under the Contract Disputes Act of 1978." Mot. for Stay 16–17. Since, according to the intervenor, this is a Contract Disputes Act ("CDA") claim, Turner was required to comply with the provisions of the CDA in order to establish jurisdiction in this Court of the contract award termination. Turner did not, and the Court therefore had no jurisdiction to restore the contract, according to the intervenor. The Court does not agree.

Two points are relevant regarding this argument. First, Harbert–Gorrie's brief is the first time throughout the entirety of this litigation where it or any other party has asserted that the Court lacks jurisdiction to grant the requested remedy. Turner initially requested a permanent injunction ordering the Army to reinstate Turner's contract in its complaint, reiterated that request in its briefs and Motion for Judgment on the Administrative Record, included a copy of the proposed injunction with that motion, and discussed the injunction request at oral argument. Harbert–Gorrie never once argued that the remedy was beyond the jurisdiction of the Court. In fact, the government was the only party to address the remedy at any length and merely argued that Turner had not satisfied the required factors for injunctive relief. *See* Def.'s Resp. to Pla.'s Mot. for Judg. on Admin. Rec. 48 (citing *PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed.Cir.2004)).

■ The parties dispute whether or not Harbert–Gorrie has waived this argument by not raising it before the present motion. Turner argues that the jurisdictional argument has been waived by not being presented in the principal briefs, but the cases that Turner relies on for this argument are inapposite to the matter at hand. For instance, Turner cites *United States v. Ford Motor*

*Co.*, but the Federal Circuit in that case merely stated that "[a]rguments raised for the first time in a *reply* brief are not properly before this court." 463 F.3d 1267, 1276 (Fed.Cir.2006) (emphasis added). Turner's other authority is similarly unavailing. *See, e.g., Ironclad/EEI v. United States*, 78 Fed. Cl. 351, 358 (2007) (noting the unfairness of allowing an argument to be presented for the first time in a reply brief) (citing *Novosteel SA v. United States & Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed.Cir.2002)). In this case, Harbert–Gorrie's jurisdictional argument was raised for the first time in its Motion For Stay, to which Turner has had the opportunity to respond. The fairness concerns Turner cited do not apply.[3]

The second relevant point here concerns the scope and purpose of the Court's remedial power in bid protest cases. The Tucker Act, 28 U.S.C. § 1491 (2006), as amended by the Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub.L. No. 104–320, 110 Stat. 3870, gives the Court of Federal Claims jurisdiction "to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). The Tucker Act also empowers the court to "award any relief that the court considers proper, including declaratory and injunctive relief...." *Id.* § 1491(b)(2).

Regarding the scope of the Court's equitable powers, Harbert–Gorrie states that it "does not contest the Court's jurisdiction and equitable authority to insert Turner back into this ongoing procurement (assuming, *arguendo*, that such relief was warranted); however, the Court had no jurisdiction over

---

3. The parties also dispute whether or not this issue is a matter of subject matter jurisdiction. Harbert–Gorrie notes, correctly, that the issue of subject matter jurisdiction cannot be waived. *Litecubes, LLC v. No. Light Prods., Inc.*, 523 F.3d 1353, 1362 (Fed.Cir.2008) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006)). Turner, however, argues that the question before the Court pertains to the scope of the Court's equitable powers, rather than its subject matter jurisdiction. Turner relies on a pre-ADRA case that noted the difference between the issues of subject matter jurisdiction and the Court of Federal Claims' power to grant a particular remedy in bid protest matters. *Cent. Ark. Maint., Inc. v. United States*, 68 F.3d 1338, 1342 (Fed.Cir.1995). The question of whether or not this particular argument could be waived is, however, unnecessary for the resolution of Harbert–Gorrie's motion.

the contract termination claim." Harbert–Gorrie's Reply 5. Both of these actions—the termination and subsequent re-procurement—were taken as corrective action by defendant in order to implement the GAO recommendation. As part of its bid protest jurisdiction, the Court of Federal Claims frequently must review agency action taken to implement GAO recommendations. The standards for this review were discussed extensively in the Court's opinion. *Turner Constr.,* slip op. at 14–16. Harbert–Gorrie appears to assert, however, that when the GAO recommends that an agency's award be overturned and re-procured, the Court of Federal Claims only has subject matter jurisdiction over the decision to re-procure and not the decision to overturn.

Harbert–Gorrie's argument is incorrect, as the Federal Circuit has proscribed the standard by which this Court reviews GAO recommendations involving the cancellation of contract awards. In a recent Federal Circuit decision, *Centech Group, Inc. v. United States,* 554 F.3d 1029 (Fed.Cir.2009), the defendant had awarded a contract to the plaintiff. *Id.* at 1034. In response to a bid protest by a competitor, the GAO ordered that negotiations be reopened and that the contract to plaintiff be terminated, if another proposal proved to be a better value. *Id.* at 1035. The defendant followed this recommendation, and the plaintiff challenged it and sought reinstatement of its initial award. *Id.* After noting that the GAO must make recommendations such as "terminating" a contract and "awarding" a new one, the Federal Circuit found that the agency acted properly in "follow[ing] GAO's recommendation." *Id.* at 1039. It is true that the agency had not yet terminated the contract and had only reopened negotiations, but the agency was prepared to terminate the contract, a decision which the Federal Circuit suggested would be reviewable. *Id.* In *Honeywell,* also, the Federal Circuit noted that the GAO must make recommendations regarding whether the "award" of a contract was legal and that an agency's decision to follow this recommendation is proper, unless the GAO decision was irrational. *Honeywell,* 870 F.2d at 648. Thus, the Court does not agree that it lacked subject matter jurisdiction. *Honeywell* and other cases describe the standards under which the Court of Federal Claims reviews an agency's decision to follow a GAO recommendation in bid protest matters, and these recommendations often may include the termination of an award.

The purpose of an injunction in cases like this one is to "restore[ ] the status quo ante the illegal cancellation." *Parcel 49C Ltd. P'ship v. United States,* 31 F.3d 1147, 1154 (Fed.Cir.1994). Although *Parcel 49C* came before the scope of the Court of Federal Claim's bid protest jurisdiction was enlarged by the ADRA, it bears some similarities to this case. The defendant in *Parcel 49C* had selected the plaintiff for the award of a contract, but then canceled the solicitation upon which the contract was based. *Id.* at 1149. The Court of Federal Claims found that the defendant had illegally canceled the solicitation and ordered the government to "proceed with award of the solicitation." *Id.* at 1149–50.[4] The Federal Circuit noted that the trial court had "properly enjoined the illegal action and returned the contract award process to the status quo ante any illegality." *Id.* at 1153. Although that case involved the cancellation of a solicitation, while this one involves the cancellation of the award of a contract, the Court believes a similar restoration of the status quo is appropriate. In this case, the Army had already chosen the recipient of the contract award, but then acted arbitrarily and capriciously in overturning that award and beginning re-procurement. The Court enjoined this action in order to "restore[ ] the status quo ante the illegal cancellation." *Parcel 49C,* 31 F.3d at 1154.

### 5. *Errors of Fact*

Finally, Harbert–Gorrie argues that the Court made "several important errors of

---

**4.** Harbert–Gorrie notes, correctly, that the injunction in *Parcel 49C* "does not order the award of the contract." *Parcel 49C,* 31 F.3d at 1153. The Court agrees with the intervenor that it would be improper to "select a contractor or award specific performance of a contract." *Hy-* *dro Eng'g, Inc. v. United States,* 37 Fed.Cl. 448, 461 (Fed.Cl.1997). This case, however, unlike *Hydro Engineering,* is not a pre-award protest in which the Court is asked to select a contractor. The Army already did.

fact" in holding that the GAO lacked a rational basis to find the CO's OCI determination unreasonable. Harbert–Gorrie only cites to one such error: the Court did not cite to a footnote in the GAO decision that mentions one of Harbert–Gorrie's allegations.

Two bid protests were brought before the GAO: one by McCarthy/Hunt and one by Harbert–Gorrie. In both of those protests, the GAO found that Turner had an unequal access to information OCI. *B.L. Harbert–Brasfield & Gorrie, JV*, B–402229 (Comp. Gen. Feb. 16, 2010), at 11; *McCarthy/Hunt, JV*, B–402229.2 (Comp.Gen. Feb. 16, 2010), at 12. In both decisions, the text of the GAO's reasoning regarding this type of OCI is, but for one exception on which Harbert–Gorrie now focuses, completely identical. In the Harbert–Gorrie but not the McCarthy/Hunt protest, the GAO notes in a footnote that "the protester offers specific evidence into the record that it alleges indicates that not all of the agency's preferences were communicated to all of the offerors. Specifically, the protester asserts that the agency had uncommunicated preferences with respect to the configuration of nursing stations, toilet room design, and parking garage configuration." *Harbert–Brasfield*, B–402229, at 8 n. 8 (internal citations removed). The evidence to which the footnote refers is the declaration of one of Harbert–Gorrie's employees; as Turner notes in its response, this employee "was never admitted to the Protective Order before GAO and never saw the Agency Report before GAO or the Administrative Record before this Court." Pla.'s Resp. 16.

■■■ The lack of a citation to this footnote is not enough to make a "strong showing" of a likelihood of success on the merits for at least three reasons. First, the Court doubts that the GAO even relied on the declaration of this employee, since the GAO found that there was an unequal access OCI in the bid protest of McCarthy/Hunt without ever citing to or discussing this declaration. *McCarthy/Hunt*, B–402229.2, at 9. Second, even in the bid protest that cites the declaration, the GAO only notes what Harbert–Gorrie had "allege[d]" and does not discuss the merit or weight of these allegations. *Harbert–Bras-*

*field*, B402229, at 8 n. 8. Third, an OCI must be established by "hard facts" that indicate the potential existence of impropriety, rather than allegations based on "suspicion and innuendo." *See C.A.C.I., Inc. v. United States*, 719 F.2d 1567, 1582 (Fed.Cir.1983). The declaration seems to be a case of sour grapes. The declarant states that he does not understand why Turner received higher ratings than Harbert–Gorrie for three specific areas of the proposal: nursing stations, toilet room design, and parking garage configuration. From those higher ratings, the declarant assumes that Turner was the beneficiary of "predetermined but unexpressed preferences." Admin. Rec. Tab. 9.1, at 6152. It is not at all clear to the Court that this lone declarant's assertion provides those "hard facts" required to find an OCI, especially in the face of the CO's contrary determination. The Court thus finds that Harbert–Gorrie has not made a "strong showing" of a likelihood of success on appeal.

### C. *Harm to Harbert–Gorrie*

■■■ A court must also consider whether a movant will suffer irreparable harm, absent a stay. Harbert–Gorrie argues that, if no stay is issued, it will suffer such harm because it will be denied an opportunity to compete for the contract. As the Court previously recognized, the loss of an opportunity to compete for a government contract can constitute irreparable injury. *Turner Constr.*, slip op. at 34–35 (citing *Overstreet Elec. Co., Inc. v. United States*, 47 Fed.Cl. 728, 743–44 (2000)).

■■■ The problem with Harbert–Gorrie's argument is that a stay is not necessary to preserve the right to compete for the contract. If the Federal Circuit reverses this Court's decision, then Harbert–Gorrie will be free to submit a second proposal in the competition for a new contract.[5] Without citing any evidence, Harbert–Gorrie asserts that, if the injunction is not stayed, construction may "have advanced to the point where a (second) termination of Turner's contract" and a subsequent re-award is impractical. Mot. for Stay 22. The first termination and prepara-

---

5. It is also worth nothing that Harbert–Gorrie already competed for this contract—and lost.

tion for re-procurement were not impractical, and Harbert–Gorrie has offered no facts to suggest that a second termination and re-procurement would now be impractical. The intervenor has failed to show it will suffer irreparable harm, and this factor does not weigh in favor of a stay.

### D. *Harm to the Army and Turner*

■ Beyond harm to the movant, a court must determine whether other parties will suffer harm if a stay is granted. Turner, as well as the government, primarily focus on the harm to the soldiers who would make use of the replacement hospital. Turner cites the Surgeon General's report that detailed the cost of complying with the GAO's recommendation; these costs include, among other things, an estimated delay of 16–22 months, the continued use of facilities that do not have adequate privacy and that fail to comply with infection control standards, and a heightened risk of hospital-related health care risks. *See* Admin. Rec. Tab 33, at 6913–16. In its brief, the Army points out that, though costly, the Army had agreed to delay re-procurement of the project while the bid protest before this Court was ongoing. The harms from that delay were minimized by the Court's expedited briefing schedule, but resolution of the appeal will now depend on the Federal Circuit.

In response, Harbert–Gorrie argues that the government's action implementing the GAO decision, rather than waiving the OCI, shows that delay is not a pivotal concern for the government. This argument, however, ignores the fact that those responsible for the waiver decision were focused on the GAO decision that found impermissible OCIs. *See Turner Constr.*, slip op. at 13; Admin. Rec. Tab 44. The Court has since found the GAO decision irrational.

The Court agrees that the Army will be harmed by a delay. Throughout this process, the Army has attempted to quickly resolve the dispute in order to complete construction of the Hospital. Because it was aware of the costs of delay to the Army and to the soldiers whom the Hospital will serve, the Court attempted to expeditiously resolve this case and agreed, early in the process, to render an opinion within a month of the date of oral argument. The harms from any further delay weigh against a stay.

The Court also, however, does not find that granting a stay would substantially harm Turner. If a stay were granted and the Federal Circuit affirmed this Court's decision, then Turner would merely have to restart construction later in the process, rather than now. While it may be true, as Turner argues in its surreply, that Turner will lose personnel due to the delay in construction, such a hypothetical, unsubstantiated concern does not amount to a substantial harm.

### E. *The Public Interest*

■ The final factor a court must consider—the public interest—also does not support a stay. *See Nken*, 129 S.Ct. at 1761; *Red River Holdings, LLC v. United States*, 91 Fed.Cl. 621, 628 (2010). Harbert–Gorrie argues that a stay will serve the public interest in " 'preserving the integrity of the federal procurement process by requiring government officials to follow procurement statutes and regulations.' " Mot. for Stay 25 (quoting *LABAT–Anderson, Inc. v. United States*, 65 Fed.Cl. 570, 581 (2005)). The Court has already made its opinion of the integrity of the process clear. Even if the Federal Circuit were to reverse this Court's decision on that point, the public interest will not be harmed by allowing work to continue on a much needed hospital, while that appeal is pending. Denying a stay will allow for a more "expeditious completion" of the Hospital. Def.'s Resp. 6; *see also* Pla.'s Resp. 20 (quoting *Nken*, 129 S.Ct. at 1757) (noting that the public interest is best served without an " 'intrusion into the ordinary process of administration and judicial review' ").

### III. *Conclusion*

OCI decisions frequently present fact-intensive inquiries that require a large amount of good judgment and discretion. *See Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1382 (Fed.Cir.2009). The complexity of these inquiries is compounded by the fact

that OCIs are a "growth area" in the law.[6] Consequently, these cases can sometimes involve difficult and unsettled questions regarding the precise application of regulations to real-world scenarios.[7] The question before the Court, however, is a simple one: whether Harbert–Gorrie has met the burden required to receive the extraordinary remedy of a stay of an injunction pending appeal. For the foregoing reasons, the Court holds that the balance of factors does not weigh in favor of a stay. Therefore, Harbert–Gorrie's Motion For Stay is DENIED.

IT IS SO ORDERED.

---

6. Daniel I. Gordon, *Organizational Conflicts of Interest: A Growing Integrity Challenge*, 35 PUB CONT. L.J. 25, 41 (2005); *see also* Joseph R. Berger, *The Year in Sustained Bid Protests at the U.S. Government Accountability Office and the U.S. Court of Federal Claims*, 37 PUB. CONT. L.J. 731, 752 (2008) (noting the "increased scrutiny" OCIs have received in recent years).

7. As recently as 2008, the government sought input on whether "the FAR's current guidance

on OCIs adequately addresses the current needs of the acquisition community...." Organizational Conflicts of Interest, 73 Fed.Reg. 15,962 (Mar. 19, 2008).

